# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **BRIAN CARRICO; KACIE CARRICO; DON GATLIN; and DORA GATLIN; individually and on behalf of all others similarly situated,** | ) ) ) ) |
| **Plaintiffs,** | ) ) |
| **vs.** | ) ) ) |
| | ) **CIVIL ACTION NO. _____** |
| **UPONOR, INC.;** | ) |
| **UPONOR NORTH AMERICA, INC.;** | ) **JURY DEMAND** |
| **DOES 1 through 100, inclusive, whose true names are unknown,** | ) ) |
| | ) |
| **Defendants.** | ) |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Brian Carrico, Kacie Carrico, Don Gatlin, and Dora Gatlin, (collectively hereinafter "Plaintiffs"), on behalf of themselves and all persons similarly situated ("the Class"), by and through their attorneys, allege as follows:

## I. INTRODUCTION

1.      This is a class action for damages and other relief asserted pursuant to Federal Rule of Civil Procedure 23 on behalf of all persons similarly situated related to blue and red colored cross-linked polyethylene tubing ("PEX") manufactured and/or distributed by Defendants Uponor, Inc. and Uponor North America, Inc. (collectively "Uponor" or "Defendants") which suffers from design and/or manufacturing defects that cause premature damage, degradation, deterioration, and failure (hereinafter "Uponor PEX").

## II. THE PARTIES

2.      Plaintiffs Brian Carrico and Kacie Carrico (collectively hereinafter "Carrico Plaintiffs") are individuals residing at all relevant times at 1203 Center Point Road, Hendersonville, Tennessee 37075 ("Carrico Plaintiffs' Home"). Carrico Plaintiffs are citizens and residents of Tennessee.

3.      Plaintiffs Don Gatlin and Dora Gatlin (collectively hereinafter "Gatlin Plaintiffs") are individuals residing at all relevant times at 1543 Anderson Road, Hendersonville, Tennessee 37075 ("Gatlin Plaintiffs' Home"). Gatlin Plaintiffs are citizens and residents of Tennessee.

4.      Carrico Plaintiffs' Home and Gatlin Plaintiffs' Home are collectively hereinafter referred to as "Plaintiffs' Homes."

5.      Defendant Uponor, Inc. is an Illinois corporation with its principal place of business located at 5925 148th Street West, Apple Valley, Minnesota 55124. Defendant Uponor North America, Inc. is a Delaware corporation with its principal place of business located at 5925 148th Street West, Apple Valley, Minnesota 55124. At all relevant times herein, Uponor designed, manufactured, marketed/advertised, sold and/or distributed Uponor PEX for use in water plumbing systems in residences and other structures throughout the United States, including Tennessee, by and through their entities, employees, agents, predecessors-in-interest, and/or other representatives.

## III. JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is a class action in which the matter in controversy exceeds $5 million, exclusive of interest and costs, and members of the Class are citizens of states different than Defendants.

7.      This Court has personal jurisdiction over Defendants because, among other things, Defendants conduct substantial business in Tennessee, have sufficient minimum contacts in Tennessee, and intentionally avail themselves of the consumers and markets within Tennessee through the promotion, advertising/marketing, partnership agreements, supply agreements, sales and distribution of its products, including Uponor PEX.

8.      Venue is proper in this Court because at all relevant time Plaintiffs resided in Sumner County, Tennessee, and pursuant to 28 U.S.C. § 1391(a)(2) a substantial part of the acts giving rise to Plaintiffs' claims occurred within Sumner County, Tennessee.

## IV.  NATURE OF DEFENDANTS' TRADE AND COMMERCE

9.      Defendants designed, manufactured, advertised/marketed, distributed, and/or sold Uponor PEX for use in water plumbing systems in residences and structures throughout the United States, including but not limited to Plaintiffs' Homes, the homes and other structures owned by members of the Class, and all other similarly situated homes and structures.

10.      Defendants designed, manufactured, advertised/marketed, distributed, and/or sold Uponor PEX for use in potable water plumbing systems throughout the United States.

11.      PEX stands for cross-linked polyethylene.  PEX is a popular product because of its purported flexibility and ease of installation.  PEX tubing is commonly either blue or red to make it readily identifiable once installed as either a cold (blue) or hot (red) water line.

12.      Defendants have repeatedly represented that consumers should trust Defendants to provide the highest quality PEX tubing because the company has many years of industry experience and is an industry leader in the manufacture of PEX tubing.

13.      Until approximately 2021, Defendants designed, manufactured, advertised/marketed, distributed, and/or sold the Uponor PEX at issue.  Defendants' sales catalog

advertised that, *inter alia*, its Uponor PEX was the highest quality PEX tubing available, and that its cross chemical bonding process gave it "superior characteristics."

14.    At    the    following    link,    https://www.uponor-usa.com/en/customer-support/faq#:~:text=Uponor%20PEX%20will%20not%20corrode,fit%20that%20type%20of%20connection, Defendants represented that Uponor PEX has "superior resistance to stress-crack corrosion" and will suffer "no micro-cracking during expansion."

15.    As of 2016, Defendants represented that they had produced over five billion feet of Uponor PEX and were responsible for approximately one-third of all PEX sold in the United States.  Defendants, on information and belief, were responsible for approximately one-third of all PEX sold in the United States between 2016 and 2021.

16.    As of 2016, Defendants did business with all of the top ten homebuilders in the United States and had exclusivity agreements with three of them.  Defendants, on information and belief, did business with all of the top ten homebuilders in the United States and had exclusivity agreements with some of them between 2016 and 2021.

17.    As of 2016, among the top ten homebuilders, Defendants claimed to have a 60% share of their housing starts.  Defendants, on information and belief, claimed to have a 60% share of the housing starts of the top ten homebuilders between 2016 and 2021.

## V.  FACTUAL ALLEGATIONS

18.    Carrico Plaintiffs' Home was built by Hannah Custom Homes, LLC, was substantially completed in February of 2017, and was originally constructed with Uponor PEX in the potable water plumbing system.

4

19.     Gatlin Plaintiffs' Home was built by Hannah Custom Homes, LLC, was substantially completed in June of 2014, and was originally constructed with Uponor PEX in the potable water plumbing system.

20.     The Uponor PEX in Plaintiffs' Homes has prematurely degraded and deteriorated and, as a result, has failed, and continues to fail, and suffers from micro-cracking causing water leaks from the Uponor PEX which results in damages to Plaintiffs' Homes.

21.     The initial leaks in the Carrico Plaintiffs' Home were in 2021 and the initial leaks in the Gatlin Plaintiffs' Home were in 2019, although Plaintiffs did not know that Defendants were the cause of the leaks until just prior to filing this complaint.  Other leaks have occurred in the Plaintiffs' Homes since the initial leaks, and leaks continue to occur in Plaintiffs' Homes from the Uponor PEX.  The leaks in the Uponor PEX in the Plaintiffs' Homes have caused substantial damages to Plaintiffs' Homes other than the leaking PEX itself, which have caused Plaintiffs to pay substantial sums to repair such damages.  Such damages continue to occur because the Uponor PEX in Plaintiffs' Homes continues to have leaks.

22.     Unlike Uponor, most PEX manufacturers add red or blue color pigment, along with antioxidant stabilizers, to the plastic formulation during the extrusion process (when the tubing is formed) and prior to cross-linking, which adds color evenly throughout the tubing wall and does not degrade the PEX.

23.     Antioxidant stabilizers are necessary to achieve the flexibility of PEX tubing, maintain ductility, and protect against embrittlement and cracking.

24.     Unlike other PEX manufacturers, Defendants manufactured PEX tubing and then, after extrusion, added a blue or red coating to the tubing's outside surface.  Coatings do not stick to PEX, so Defendants patented a process to color coat their PEX tubing. Defendants' patented

process involves conveying the PEX tubing "through an oxidizing step in which at least the outer surface of the base pipe is oxidized, through a coating step in which a pre-polymer system is applied to the outer surface of the base pipe and through a curing step in which the pre-polymer is cured to form a layer of the pipe." Uponor Innovation AB, Fristad (SE), Appl. No. 12/572,683, Filed Oct. 2, 2009.

25.     This means that in order to get the coating to stick to the outside surface of the Uponor PEX tubing, Defendants run the tubing through a furnace/flame treatment that oxidizes/burns the outside of the pipe. While the furnace/flame treatment improves adhesion qualities of polymers prior to the application of coatings and adhesives, it is an oxidation process that destroys the antioxidants from the outside of the Uponor PEX tubing, subjecting the tube to actual damage and premature failure in the form of, among other things, oxidative degradation, micro cracking, cracking, through-wall cracking, and leaks, which leaks cause substantial property damage to other property in the structures where the Uponor PEX tubing is used.

26.     The below photograph depicts the difference between Uponor PEX, displaying the coating only on the tube's exterior surface, and other manufacturers' PEX, displaying the color through the entire tube.



27.     Because the outside surface of Uponor PEX is depleted of antioxidants after the flame treatment, the outside surface prematurely becomes brittle and develops microcracks when

the tubing is expanded during installation. The embrittlement and microcracks constitute damage to the tubing and the cracks continue to grow and spread over time, eventually propagating through the PEX, causing resultant leaks, significant damage to other property, loss of use of the plumbing system, and/or preventing the plumbing system from functioning as intended.

28.     Contrary to the affirmative statements made by Defendants as set out in Section IV above, the Uponor PEX suffers from design and/or manufacturing defects causing damage.

29.     Specifically, and as a result of such defects, the Uponor PEX is predisposed to premature oxidative failure, micro cracking, through wall cracking, leaks, loss of use, and other failure and damages. These defects cause the Uponor PEX to crack, fail to perform when put to its intended use, leak, and substantially reduce its normal useful life.

30.     Before designing, manufacturing, advertising/marketing, distributing and/or selling Uponor PEX, Defendants failed to take appropriate steps to ensure that its products were safe for their intended use.

31.     Defendants failed to disclose this material information about defects in Uponor PEX to Plaintiffs, members of the Class, and the public.

32.     Defendants knew or should have known that Uponor PEX was not suitable for use within water plumbing systems and that Uponor PEX suffered from the defects and caused damages as alleged herein.

33.     Uponor PEX has caused damage to, and failure of, plumbing systems, which has caused and will continue to cause Plaintiffs and the Class to incur damages through no fault of their own.

34.     Beginning in or around 2021, Defendants discontinued their manufacture, distribution and sale of red and blue Uponor PEX because of the defects with the product.

However, Defendants misrepresented that the product was being "suspended," not "discontinued," and instead concealed that it discontinued the product due to the defects and premature failures and damages.

35.     Even though Defendants discontinued their manufacture, distribution, and sale of red and blue Uponor PEX in or around 2021 because of the defects with the product, Defendants failed to (1) notify Plaintiffs, members of the Class or the public of any defects or problems with the Uponor PEX, or (2) fully or adequately compensate property owners, including, but not limited to, Plaintiffs and members of the Class, who have been injured as a result of the defective Uponor PEX.

36.     At no time did Defendants or any of their agents, dealers or other representatives inform Plaintiffs or members of the Class or the public of Defendants' acts and/or omissions related to defects in Uponor PEX.

37.     Plaintiffs have suffered an ascertainable loss as a result of Defendants' acts and/or omissions associated with Uponor PEX, including Defendants' non-disclosures about the product defects and discontinuing/suspending the manufacture, distribution, and sale of the Uponor PEX.

38.     Plaintiffs seek relief for damages sustained by Plaintiffs and the Class that Defendants' proximately caused by the use of Defendants' Uponor PEX in Plaintiffs' and Class members' homes and other structures.

39.     Plaintiffs seek relief to remedy Defendants' strict products liability violations, breaches of implied warranty, and negligence.

## VI.  DAMAGES WERE CAUSED BY DEFECTIVE UPONOR PEX

40.     The Uponor PEX in Plaintiffs' Homes and structures owned by members of the Class has malfunctioned, cracked, leaked, and caused damages to Plaintiffs and the members of the Class.

41.     Plaintiffs and members of the Class have suffered actual and substantial damages to their homes and other structures, including without limitation to property other than the Uponor PEX itself, caused by leaks from the Uponor PEX in the potable water systems in Plaintiffs' Homes and the structures owned by members of the Class.

42.     As a result of Defendants' conduct, Plaintiffs and the putative Class have suffered ascertainable losses in the form of damages and the need to remove and replace the Uponor PEX plumbing systems in their homes and other structures.

43.     The leaks in the Plaintiffs' Homes and in the structures owned by members of the Class were caused solely by the defects in the Uponor PEX discussed above.  The furnace/flame treatment used by Defendants destroyed the antioxidants from the outside of the Uponor PEX tubing, subjecting the tube to actual damage and premature failure in the form of, among other things, oxidative degradation, micro cracking, cracking, through-wall cracking, and leaks, which leaks cause substantial property damage to other property in the structures where the Uponor PEX tubing is used.

44.     Defendants' acts and omissions as alleged herein caused Plaintiffs' and the Class' injuries, including, but not limited to, the amount of out-of-pocket losses from damages to Plaintiffs' and the Class' homes and other structures, businesses, and personal property from the cost of replacement tubing and fittings, water leaks, the cost to repair any leaks, and/or the cost

9

to repair or replace personal and/or real property damaged from the leaks associated with the defective Uponor PEX.

45.     Uponor's manufacturing process caused inherent defects in the Uponor PEX, including but not limited to oxidative degradation, micro cracking, cracking, through-wall cracking, leaks, and other damages to the PEX, which has caused premature degrading, deteriorating, and/or failing plumbing systems in Plaintiffs' Homes and in the structures owned by members of the Class. Defects in the Uponor PEX and Defendants' related acts and omissions have proximately caused and/or will cause loss of use of the plumbing systems and/or prevent the plumbing systems from functioning as intended, and the need to repair and/or replace the plumbing systems. Replacing the plumbing systems in the Plaintiffs' Homes and in the structures owned by members of the Class will necessarily require destruction or damage to other property in the homes and structures, such as the drywall and other materials that must be demolished and repaired in order to access, repair, and replace the affected plumbing systems.

## VII.  STATUTES OF LIMITATIONS TOLLING

46.     Plaintiffs' claims and all Class claims are brought within the applicable statutes of limitations for product liability, breach of implied warranty, and negligence claims.

47.     To the extent Defendants assert that Plaintiffs or any class members' claims are barred by any statute of limitation or statute of repose, Plaintiffs allege and aver as follows.

48.     Plaintiffs did not know or learn of Plaintiffs' claims and could not reasonably have known of such claims until the leaks and damages occurred and Plaintiffs learned that Defendants' actions and inactions caused the leaks. Plaintiffs did not discover that Defendants' actions and inactions caused the leaks until shortly before the filing of this Complaint.

49. Defendants knowingly and actively concealed and failed to disclose relevant information to Plaintiffs and members of the Class related to the defective nature of Uponor PEX.

50. Defendants engaged in a scheme to cover up evidence of premature deterioration and failure of Uponor PEX by making spot repairs of the Uponor PEX when leaks were reported and not notifying all potentially affected persons of such deterioration and failure of Uponor PEX.

51. Because the defects in Uponor PEX are latent, Plaintiffs and members of the Class could not have reasonably discovered the true nature of the defects or the cause of the leaks until shortly before the filing of this Complaint.

52. Any applicable statute of limitations was tolled by Defendants' knowing and active concealment and denial of the facts alleged herein.

## VIII. CLASS ACTION ALLEGATIONS

53. This action is brought on behalf of Plaintiffs, individually and as a class action, pursuant to FED. R. CIV. P. 23(a), 23(b)(1), 23(b)(2), and/or 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

54. Plaintiffs assert these claims individually and on behalf of a class of owners of homes and other structures in Tennessee with Uponor PEX (the "Class"). Specifically, the Class consists of:

> **All persons or entities who own homes, businesses, or other structures in Tennessee with Uponor PEX used as the lines and components of a potable water plumbing system.**

55.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used in individual actions alleging the same claims.

56.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Fed. R. Civ. P. 23.

57.     **Numerosity (Fed. R. Civ. P. 23(a)(1)).**  The members of the class defined herein are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  Plaintiffs' claims are typical of the claims of the members of the Class.  Plaintiffs own homes with Uponor PEX in Tennessee.  Plaintiffs seek to assert the claims as alleged in this Complaint that are typical of the claims that would be asserted by the members of the Class. Plaintiffs are informed and believe and thereon allege that the proposed Class contains thousands of individuals and entities who own homes or other structures in Tennessee with Uponor PEX. The disposition of the class members' rights with respect to the alleged defects, as described in this Complaint, is a benefit to all parties and to the Court.

58.     **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23 (b)(3)).**  This action has been brought and may be properly maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is numerous and ascertainable, and the common questions of law and fact predominate over any questions affecting solely individual members of the Class.

59.     **Typicality (Fed. R. Civ. P. 23(a)(3)).**  Plaintiffs' claims are typical of the claims of Uponor PEX.  Plaintiffs and the Class have been injured by the same wrongful practice of Defendants.  Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of the Class and are based on the same legal theories.

60.     **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4)).**  Plaintiffs will fairly and adequately represent the interests of all members of the Class.  Plaintiffs own homes with Uponor PEX in Tennessee and are adequate representatives of the Class as they have no interests which are adverse to the interests of the Class that they seek to represent.  Plaintiffs have retained attorneys that have substantial experience in the prosecution of defective product consumer protection class action litigation.   The interests of the Class will be fairly and adequately represented and protected by Plaintiffs and their counsel.

61.     **Class Action Status (Fed. R. Civ. P. 23(b)(1)).**  Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interest.

62.     **Declaratory and Injunctive Relief (Fed. R. Civ. P. 23(b)(2)).**  Certification under Rule 23(b)(2) is warranted because Defendants acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

63.     **Superiority (Fed. R. Civ. P. 23(b)(3)).**  A class action is superior to other available means of fair and efficient adjudication of this controversy.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that

numerous individual actions would engender. The disposition of their claims in this case and as part of a single class action lawsuit, rather than thousands of individual lawsuits, will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Furthermore, given the potential for extraordinary expenses and burdens in conducting the discovery and presentation of evidence regarding the inherent defects in Uponor PEX, the burden of individual litigation would make it extremely difficult, if not impossible, for individual members of the Class to redress the wrongs asserted herein, while an important public interest will be served by addressing the matter as a class action. Moreover, separate prosecution by thousands of individual members of the Class would likely establish inconsistent standards of conduct for the Defendants and result in the impairment of and potential harm to the Class members' rights and the disposition of their interests through actions to which they were not parties.

64. Individualized litigation would also undermine judicial economy and raise the prospect of inconsistent or contradictory judgments, increase the likelihood of delay, and generate additional expenses for all parties and the court system. The class action device, on the other hand, presents far fewer management challenges and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

65. Plaintiffs have adequately and objectively defined the Class so the Court will be able to use the class definition to determine the class members. Defendants' records, as well as public records searches and records of third parties, will reveal the identities of Class members. A brief inspection will show which homes and other structures have lines and components of the potable water plumbing system with Uponor PEX. Therefore, the putative class is ascertainable.

66.     Common questions of law and fact exist as to the members of the Class, including but not limited to:

i.      Is Uponor PEX defective?

ii.     Was Uponor PEX defectively designed and/or defectively manufactured for its intended purpose as the plumbing for potable water systems in homes and other structures?

iii.    Is Uponor PEX that was manufactured between 2009 and 2021 prematurely failing, degrading, and/or deteriorating?

iv.     Is Uponor PEX that was manufactured between 2009 and 2021 subject to premature failure, degradation, and/or deterioration?

v.      At the time the Uponor PEX left the control of Defendants, was it defective in design and manufacture and unreasonably dangerous to Plaintiffs and the members of the Class who might reasonably be expected to use it in the plumbing systems in their homes and other structures?

vi.     Did Defendants know or should they have known that Uponor PEX is inherently defective and substantially certain to malfunction during its useful life?

vii.    Did Defendants fail to warn consumers that Uponor PEX is subject to premature failure, degradation, and/or deterioration?

viii.   Did Defendants make misleading statements in connection with the advertising/marketing and/or sale of Uponor PEX?

ix.     Did Defendants omit material information when they advertised/marketed and/or sold Uponor PEX?

viii.     Did Defendants owe a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, advertising/marketing, distribution and/or sale of Uponor PEX?

ix.     Did Defendants exercise reasonable care in the design, testing, manufacture, advertising/marketing, distribution, and/or sale of Uponor PEX?

x.     Did Defendants breach their duties to Plaintiffs and the Class?

xi.     Did Defendants cause damages to the homes and structures of Plaintiffs and the Class from leaks in the Uponor PEX?

xii.     Are Defendants liable to Plaintiffs and the Class to repair damages caused by leaks in the Uponor PEX?

xiii.     Are Defendants liable to Plaintiffs and the Class for replacement of all Uponor PEX piping in the homes and structures of Plaintiffs and the Class?

xiv.     Did Defendants violate other Tennessee laws?

xv.     Did Defendants' conduct constitute willful misconduct and/or fraudulent concealment?

These and other common questions of law and fact predominate over any questions affecting solely individual members of the Class.

67.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

68.     Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final relief with respect to the Class as a whole.

## IX.  CAUSES OF ACTION

### COUNT I - STRICT PRODUCT LIABILITY
**(Plaintiffs, on behalf of themselves and all others similarly situated, Against All Defendants)**

69.     Plaintiffs repeat and re-allege all prior and subsequent paragraphs and incorporate them as if repeated in full herein.

70.     At all times material to this action, Defendants were in the process of designing, engineering, developing, testing, approving, manufacturing, fabricating, equipping, inspecting, repairing, labeling, advertising, promoting, marketing, distributing, selling, and supplying Uponor PEX throughout the United States, including Tennessee.

71.     At the time the Uponor PEX left the control of Defendants, it was defective in design and manufacture and unreasonably dangerous to Plaintiffs and the members of the Class who might reasonably be expected to use it in the plumbing systems in their homes and other structures. These defects include, but are not limited to, the conditions described in in this Complaint.

72.     The Uponor PEX was expected by Defendants to reach, and did reach, property owners/end users without substantial change in the condition in which it was placed on the market and was expected to be installed in the homes and other structures of Plaintiffs and members of the Class.

73.     Plaintiffs and the members of the Class are persons and entities who would reasonably be expected to be owners to have Uponor PEX as a water plumbing system installed in their homes and other structures.

74.     The defects in the Uponor PEX caused by Defendants were a direct and proximate cause of damages suffered by Plaintiffs and the members of the Class, which damages generally

include (1) costs to repair damages caused by the leaks, and (2) costs to replace the defective Uponor PEX throughout the homes, businesses, and other structures of Plaintiffs and the Class.

75. Defendants are strictly liable to Plaintiffs and the Class for the damages caused by the defects and inadequacies in the design and manufacturer of Uponor PEX.

## COUNT II - STRICT PRODUCT LIABILITY FOR DESIGN DEFECT
### (Plaintiffs, on behalf of themselves and all others similarly situated, Against All Defendants)

76. Plaintiffs repeat and re-allege all prior and subsequent paragraphs and incorporate them as if repeated in full herein.

77. Defendants are liable to Plaintiffs and the Class for the injuries and damages sustained by Plaintiffs and the Class pursuant to Tennessee common law and/or the Tennessee Product Liability Act due to the defective design and/or formulation of Uponor PEX.

78. At times material to these allegations, Defendants designed, formulated, manufactured, distributed, supplied, and/or sold Uponor PEX.

79. Defendants, as the designers and manufacturers of Uponor PEX, are held to the level of knowledge of an expert in the field of the design and manufacture of PEX plumbing including any cracking, micro cracking, oxidative degradation, deterioration, weakening, failure or leaks caused by a furnace/flame treatment and/or the application of coatings and adhesives to the PEX.

80. The Uponor PEX used in the homes and structures of Plaintiffs and the members of the Class was defective in design and/or formulation in the following respects.

81. Between 2009 and 2021, in order to get a red or blue coating to stick to the outside surface of the Uponor PEX tubing, Defendants run the tubing through a furnace/flame treatment that oxidizes/burns the outside of the pipe. While the furnace/flame treatment

improves adhesion qualities of polymers prior to the application of coatings and adhesives, it is an oxidation process that destroys the antioxidants from the outside of the Uponor PEX tubing, subjecting the tube to actual damage and premature failure in the form of, among other things, oxidative degradation, micro cracking, cracking, through-wall cracking, and leaks, which leaks cause substantial property damage to other property in the structures where the Uponor PEX tubing is used.

82.     At the time the Uponor PEX left the control of Defendants, it was defective in design and manufacture and unreasonably dangerous to Plaintiffs and the members of the Class who might reasonably be expected to use it in the plumbing systems in their homes and other structures. These defects include, but are not limited to, the conditions described in this Complaint.

83.     The Uponor PEX installed in the homes and structures of Plaintiffs and the members of the Class was installed therein without any change in the condition of the Uponor PEX from its condition when it left the control of Defendants.

84.     Plaintiffs and the members of the Class were persons who would be expected to use PEX as the potable water systems in their homes and other structures.

85.     The defects in the Uponor PEX used in the homes and structures of Plaintiffs and the members of the Class were a direct and proximate cause of the injuries and damages sustained by Plaintiffs and the members of the Class.

## COUNT III - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
**(Plaintiffs, on behalf of themselves and all others similarly situated, Against All Defendants)**

86.     Plaintiffs repeat and re-allege all prior and subsequent paragraphs and incorporate them as if repeated in full herein.

87.     At all relevant times herein and specifically between 2009 and 2021, Defendants manufactured, distributed, sold, and/or supplied the Uponor PEX for use in potable water systems.

88.     Prior to the time the Uponor PEX was installed into the homes and other structures owned by Plaintiffs and the members of the Class, Defendants impliedly warranted that Uponor PEX was of merchantable quality and fit for the ordinary use for which it was intended.

89.     The Uponor PEX was unfit for its intended use and was not of merchantable quality because of the defects in the Uponor PEX alleged herein.

90.     Defendants breached the implied warranty of merchantability, as the Uponor PEX was not of a merchantable quality due to the defects alleged herein.  As a direct and proximate result of Defendants' breach of said implied warranties, Plaintiffs and the members of the Class have suffered, and will continue to suffer, damages as alleged herein in an amount to be determined at trial.

## COUNT IV - NEGLIGENCE
**(Plaintiffs, on behalf of themselves and all others similarly situated, Against All Defendants)**

91.     Plaintiffs repeat and re-allege all prior and subsequent paragraphs and incorporate them as if repeated in full herein.

92.     Defendants owed Plaintiffs and the members of the Class a duty to exercise reasonable and ordinary care in the testing, design, manufacture, distribution, advertising/marketing, and/or sale of the Uponor PEX.

93. Defendants negligently, carelessly, tortuously, and/or wrongfully failed to use reasonable care in the testing, design, manufacture, distribution, advertising/marketing, and/or sale of the Uponor PEX in the homes and other structures owned by Plaintiffs and the members of the Class.

94. Defendants knew or should have known that owners of homes and other structures with Uponor PEX, including Plaintiffs and the members of the Class, would be substantially damaged thereby, as alleged herein.

95. The use of Uponor PEX has resulted in or will result in foreseeable damage as alleged herein which damages generally include (1) costs to repair damages caused by leaks, and (2) costs to replace the defective Uponor PEX throughout the homes, businesses, and other structures of Plaintiffs and the Class.

96. Defendants were under a duty to exercise ordinary care to avoid reasonably foreseeable injury to users and purchasers of homes and other structures, and knew or should have foreseen with reasonable certainty that purchasers and/or end users would suffer the damages set forth herein if Defendants failed to perform their duty to cause the Uponor PEX to be tested, designed, manufactured, distributed, advertised/marketed, and/or sold in a proper workmanlike manner and fashion.

97. Defendants failed and neglected to properly test, design, manufacture, distribute, advertise/market, and/or sell Uponor PEX in that each Defendant so negligently, carelessly and in an unworkmanlike manner performed the aforesaid work such that the Uponor PEX was tested, designed, manufactures, distributed, advertised/marketed, and/or sold improperly, negligently, carelessly and/or in an unworkmanlike manner.

98.     Plaintiffs and the members of the Class are lay people and lack the knowledge and understanding to inspect their homes or other structures for Uponor PEX and understand whether the lines and components of the plumbing systems have any defects.  Plaintiffs and the members of the Class lack the ability to test the Uponor PEX to know whether a defect exists.

99.     Defendants' negligence is a substantial factor in causing the damages as alleged herein.

100.    As a direct and proximate result of the conduct described herein,  Plaintiffs and the members of the Class have suffered damages, including but not limited to damages to other property, in an amount precisely unknown, but believed to be within the jurisdiction of this Court as alleged in this Complaint and incorporated herein, and according to proof at trial.

101.    As a direct and proximate result of Defendants' negligence, carelessness, and breaches their duty of reasonable and ordinary care, Plaintiffs and the Class have been caused to suffer losses and damages, including the cost of repairing and replacing the Uponor PEX, interruption of their businesses and home life, damage to their homes, businesses, and personal property due to leakage, and other incidental and consequential expenses associated with the failure of Uponor PEX, all of which damages were foreseeable by Defendants.

## X.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request, on behalf of themselves and members of the Class, that this Court:

A.      determine that the claims alleged herein may be maintained as a class action under Rule 23(a), (b)(1), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, and/or under Tennessee law, and issue an order certifying the Class as defined above and designating Plaintiffs' counsel as counsel for the Class;

B.      award all actual general, special, incidental, statutory, punitive, and/or consequential damages to which Plaintiffs and the members of the Class are entitled;

C.      award pre-judgment and post-judgment interest on such monetary relief;

D.      award all costs of suit, costs of notice, forensic investigation and analysis costs, and fees of experts, including engineering, design, formulation, PEX, and construction experts;

E.      award attorney fees and costs as provided for by any applicable statute or law; and,

F.      grant such further and other relief that this Court deems appropriate. This relief may include, without limitation, any remediation, inspection, notice, and/or other necessary steps to be undertaken with respect to putative Class members and Class members including, without limitation, putative Class members and Class members regarding whom the Uponor PEX defects have not yet manifested.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the Class members, demand a trial by jury on all issues so triable.



Respectfully submitted,


*/s/Andrew J. Pulliam*
Andrew J. Pulliam (Tenn. BPR No. 016863)
James C. Bradshaw III (Tenn. BPR No. 013170)
J. Graham Matherne (Tenn. BPR No. 011294)
Ann Weber Langley (Tenn. BPR No. 038070)
**WYATT, TARRANT & COMBS, LLP**
333 Commerce Street, Suite 1050
Nashville Tennessee 37201
Telephone: (615) 244-0020
Fax: (615) 256-1726

Email: apulliam@wyattfirm.com
Email: jbradshaw@wyattfirm.com
Email: gmatherne@wyattfirm.com
Email: alangley@wyattfirm.com

*Attorneys for Plaintiffs and Class Representatives, on behalf of themselves and all others similarly situated*

101111379.1