# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| BRIAN CARRICO; KACIE CARRICO; DON GATLIN; and DORA GATLIN; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UPONOR, INC.; UPONOR NORTH AMERICA, INC.; DOES 1 through 100, inclusive, whose true names are unknown,<br><br>Defendants. | Case No. 3:23-CV-00497<br><br>District Judge Eli Richardson<br><br>Magistrate Judge Jeffrey S. Frensley |

**SPECIALLY APPEARING DEFENDANT UPONOR NORTH AMERICA, INC.'S
REPLY IN SUPPORT OF ITS DISMISSAL MOTION**

## I. INTRODUCTION

It is abundantly clear – through the many pleadings and exhibits Plaintiffs have filed – that there is no substance to their effort to establish personal jurisdiction over UNA. Plaintiffs' current Opposition and exhibits are again notable since they omit any actual/direct evidence that UNA designs, manufactures, sells, or distributes products in Tennessee. Plaintiffs provide no declaration stating they, or anyone else involved in the construction of their homes, purchased PEX from UNA, contracted with UNA, or dealt with UNA. Nor have Plaintiffs submitted any declaration or evidence showing any putative class member – or person or entity in Tennessee –purchased PEX from, or contracted with, UNA. The reason is simple: co-defendant Uponor, Inc. ("**UI**") designs, manufactures, sells and warrants PEX; **not UNA**.

To obscure this dearth of evidence, Plaintiffs cobble together irrelevant "facts" such as: (i) UNA's positions and presence in unrelated, prior lawsuits; (ii) outdated case law addressing jurisdiction over a different entity–UC–in other States; (iii) language from a 2005 insurance policy; and (iv) cherry-picked statements from company reports and Internet sources, which do not communicate details of "Uponor" entities' legal structure, management, operations, or finances. Plaintiffs also advance confused and conflicting theories of jurisdiction. For example, they claim UNA conducts business in Tennessee; UC's non-existent forum contacts can be imputed to UNA per a "single enterprise" theory; and UNA is an alter ego or agent of UC, UI, or both. These futile attempts highlight that Plaintiffs have thrown anything they can find against the wall. Nothing sticks, and Plaintiffs cannot proceed against UNA. Accordingly, UNA must be dismissed.[1]

---

[1] Plaintiffs' Opposition to UNA's Motion only addresses personal jurisdiction. Plaintiffs discuss UNA's arbitration and dismissal arguments in their response to UI's Motion. (Dkt. No. 72 at 1-2 n. 1; Dkt. No. 73 at 1-2 n. 1). This Reply is therefore limited to jurisdiction and UNA asks the Court to consider/apply the non-jurisdictional arguments in UI's Reply to UNA.

1

## II. ARGUMENT

### A. Plaintiffs Cannot Establish Personal Jurisdiction Based on Irrelevant, Unrelated Prior Cases Involving UNA or UC

In their SAC and Opposition, Plaintiffs contend UNA is subject to this Court's jurisdiction based on: (i) UNA's alleged positions and presence in prior cases in Tennessee and elsewhere; and (ii) outdated case law addressing jurisdiction over UC in Minnesota and Nevada. (SAC ¶¶ 19, 22; Opp. at 2-4, 12-17, 20-29). As UNA has made clear in prior filings addressing these specious contentions, Plaintiffs' approach fails for several reasons. **First**, Plaintiffs do not address, much less refute, the law cited in UNA's Motion which holds "there is nothing inherently contradictory" about challenging jurisdiction "in one case and not another[,]" and "[a] party's consent to jurisdiction in one case [] extends to that case alone. It in no way opens that party up to other lawsuits" in the same, or a different, forum. (*See* Mot. at 10 & n. 1).

**Second**, Plaintiffs cite UNA's answer in a 2019 subrogation action in Hamilton County wherein UNA did not deny allegations about its supposed manufacture and sale of PEX (the "**Prior Tennessee Action**"). (Dkt. No. 73-2). Plaintiffs contend this answer is prima facie evidence of UNA's forum contacts. (Opp. at 13-15). However, paragraphs 16 and 17 of the complaint allege UNA "is subject to the Tennessee Long-Arm statute, and a Tennessee Court's jurisdiction over this cause of action" because the "subject supply line" was "manufactured, assembled, distributed, marketed, and sold by [UNA] under its own name." **UNA did NOT admit these jurisdictional allegations**. (*Compare* Dkt. No. 73-2 at Compl. ¶¶ 16-17, *with* Answer. ¶¶ 16-17). Moreover:

- Courts reject a bootstrapping approach to jurisdiction that relies on a defendant's positions in a prior lawsuit, even when both cases involve the same forum;[2]

---

[2] *BioConvergence LLC v. Singh*, 2023 U.S. Dist. LEXIS 99352, at *11 (D.D.C. June 7, 2023) ("Court rejects Singh's contention that because Green participated in the bankruptcy case in this District, she has waived any future challenge to jurisdiction here").

- Federal courts recognize "[a] defendant's strategic determination whether to contest personal jurisdiction is impacted by a multitude of factors, including but not limited to, the type of claims asserted, the presence of other defenses or defendants, and the costs of defense." Similarly, "[o]bvious policy and fairness concerns dictate that a defendant not be forced to litigate personal jurisdiction in every case . . . lest its actions operate as a permanent bar to contesting personal jurisdiction in the future."[3]

- **The Prior Tennessee Action was a subrogation action seeking recovery that was quickly resolved and voluntarily dismissed with prejudice**. (Dkt. No. 73-2 at Compl. ¶ 12 and Prayer). It is unsurprising that UNA chose to resolve the claim, rather than engage in an extended jurisdictional fight that would likely have cost more than the case was worth; and

- A party's statement in a different/earlier case is **not** a binding judicial admission in a later lawsuit. At most, it is an "evidentiary" matter which is "not conclusive, and may be contradicted by other evidence." *Al Qari v. Am. S.S. Co.*, 2023 U.S. Dist. LEXIS 154452, at *18 (E.D. Mich. Aug. 31, 2023). The Court has three Declarations from UNA and UC personnel – including UNA's General Counsel John Schleiter and UC's CEO Michael Rauterkus – which establish UNA does not manufacture, sell, or distribute PEX anywhere. (Schleiter Decl. ¶¶ 3-11; Beissel Decl. ¶¶ 3-4; Rauterkus Decl. ¶¶ 4, 18, 25(b)). There is no legal basis for ignoring these sworn statements and claiming an answer submitted in a prior, unrelated, action is binding and preclusive on UNA in the instant matter.[4] Indeed, it is **Plaintiffs burden** to establish personal jurisdiction over UNA, and their failure to rebut UNA's sworn affidavits is fatal to their claim. *Williams v. FirstPlus Home Loan Tr. 1996-2*, 209 F.R.D. 404, 412 & n.7 (W.D. Tenn. 2002) (plaintiffs failed to satisfy burden where "uncontested affidavits provided by defendants" established lack of Tennessee contacts); *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929-30 (6th Cir. 1974) (when party supports motion to dismiss with declarations, "non-moving party may not rest upon allegations or denials in his pleadings but his response by affidavit or otherwise must set forth specific facts showing that the court has jurisdiction."); *Ga. Gaming Inv., LLC v. Chi. Title & Tr. Co.*, 2021 U.S. Dist. LEXIS 180900, at *5 (W.D. Tenn. Sep. 22, 2021) (courts are not required to credit incompetent evidence or ignore information in undisputed declarations).

**Third**, Plaintiffs contend UNA is judicially estopped from contesting jurisdiction, (Opp. at 29-30), but ignore law holding that foregoing a jurisdictional challenge in one case does not preclude a party from contesting jurisdiction in a later proceeding, even under an estoppel theory.[5]

---

[3] *Madison Cnty. Communs. Dist. v. Centurylink, Inc.*, 2012 U.S. Dist. LEXIS 180066, at *14 (N.D. Ala. Dec. 20, 2012).

[4] The Declaration of Michael Rauterkus was filed with UC's Motion to Dismiss. (Dkt. No. 69-2).

[5] *Eight Mile Style, LLC*, 2020 U.S. Dist, LEXIS 58134, at *13-14; *VGM Fin. Servs. v. Singh*, 708 F. Supp. 2d 822, 832-841(N.D. Iowa 2010) (defendant's answer in prior case admitting jurisdiction was not binding in a later action).

3

**Fourth**, Plaintiffs rely on outdated cases addressing jurisdiction over a different entity (**UC**) in different States (**Nevada and Minnesota**). Significantly, it is settled law that "personal jurisdiction requires a forum-by-forum [] analysis[,]" *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011), and these non-Tennessee cases are irrelevant. That is especially true where: (i) those cases were predicated on now-superseded and invalid jurisdictional standards (Mot. at 10 n. 3); and (ii) more recently, in July 2022, the California Superior Court held UNA was not subject to jurisdiction because it was (and remains currently) "an out-of-state holding company that does not manufacture, distribute, supply, or sell any products, let alone in California[,]" and "UNA also does not directly own, and does not control, Uponor, Inc." (RJN, Ex. 1).[6]

### B. Plaintiffs Have No Actual/Direct Evidence of Any UNA Forum Contacts, and Cannot Establish Jurisdiction Based on Other "Uponor" Entities

Plaintiffs focus on specific jurisdiction, yet fail to identify any actual/direct evidence that UNA (rather than UI) designs, manufactures, sells, or distributes PEX in Tennessee, or engaged in any activities that satisfy the 3-part specific jurisdiction test adopted by the Sixth Circuit. For example, Plaintiffs have submitted no declarations stating anyone purchased PEX from UNA, contracted with UNA, or dealt with any UNA personnel. Nor is there a declaration from any putative class member, or person/entity in Tennessee, attesting to purchasing products from, contracting with, or communicating with, UNA. Instead, Plaintiffs point to the SAC's allegations and UNA's presence in past lawsuits and extrapolate that UNA has "purposefully availed itself"

---

[6] Plaintiffs inconsistently assert (i) the "Court can consider facts found in other cases" as "evidence in assisting Plaintiffs to make a prima facie case that there is jurisdiction over UNA"; while simultaneously protesting that (ii) "the Court cannot take judicial notice" of the California order because "facts about [UNA's] purported availment in Tennessee are disputed." (Opp. at 12 n. 14). Plaintiffs cite no law for this "heads-I-win-tails-you-lose" approach, and they cannot justify a double-standard which only allows for consideration of evidence Plaintiffs deem beneficial. That is especially true where Plaintiffs have alluded to UNA's alleged activities **in California**. (Opp. at 4, 10; SAC ¶¶ 17, 22, 24). Because there is no question the California court entered the order and made the findings in Ex. 1 to UNA's RJN, judicial notice of Ex. 1 is proper and warranted.

of doing business in Tennessee in a manner giving rise to jurisdiction. (Opp. at 13-18). Plaintiffs cannot overcome UNA's sworn and unsworn evidence via extrapolation or regurgitation of the SAC's allegations, *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991), nor can they establish jurisdiction based on UNA's presence in other, unrelated, lawsuits, as explained above.[7]

Having failed to meet the 3-part specific jurisdiction test, Plaintiffs claim UNA can be sued in this Court due to its relationship and interactions with its indirect parent company UC, and its indirect subsidiary UI. (Opp. at 19-26). While Plaintiffs effectively abandon their "single enterprise" theory—which is not cognizable under Sixth Circuit law—(Mot. at 11-12), they still urge the Court to find jurisdiction under alter ego and agency theories. (Opp. 19, 26). Both fail.

### 1. **Plaintiffs' Alter Ego Theory Fails**

As shown below, Plaintiffs' alleged evidence fails to support an alter ego relationship, which requires proof a parent exercises "pervasive control over the subsidiary . . . from broad policy decisions to routine matters of day-to-day operation." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 848-49 (6th Cir. 2017).

a) **The CGL Insurance Policy**: Plaintiffs rely on a 2005 insurance policy covering UNA and subsidiaries, including UI, for liability for the manufacturing, distribution, and sale of products. (Opp. at 4, 15, 21, 23, 26). Courts have repeatedly held that a parent procuring or paying for a subsidiary's insurance is **normal** corporate oversight and management that cannot support

---

[7] Plaintiffs cite *Mott v. Schelling & Co.*, 1992 WL 116014 (6th Cir. May 29, 1992) to support the assertion that UNA is subject to personal jurisdiction in Tennessee since UNA "knows that Uponor PEX is being sold in the United States via manufacture in Minnesota and then sold to distributors in Tennessee." (Opp. at 17). Plaintiffs contend UNA is subject to jurisdiction since it allegedly acts as the "head" of a "North America division" of Uponor and thus "cultivates the U.S. market and benefits from numerous U.S. sales." (*Id.*) However, unlike in *Mott*, wherein the defendant challenging jurisdiction had undisputedly designed and sold the product at issue into the forum, here, there are no allegations UNA designed or sold anything, and the only competent evidence shows UNA is a holding company that does not design or sell products.

an alter ego finding.[8]  Furthermore, the insurance policy is not evidence UNA designs, manufactures, or distributes products.  It is routine, and prudent, for holding companies to obtain insurance against the possibility of erroneous claims/lawsuits they may be named in related to products manufactured or sold by another, even remotely, related entity.  UNA's decision to insure against that risk (and the potential for an incorrect ruling on a motion to dismiss) is prudent – **not** an admission UNA manufactures or sells PEX, much less has Tennessee contacts.

      b)    <u>**The Beissel Declaration**</u>:  Plaintiffs contend Ms. Beissel's Declaration shows UNA designs, markets, and sells PEX with UI because she serves as a Manager of Claims, Risk and Insurance for both entities.  (Opp. at 5).  Plaintiffs erroneously claim Ms. Beissel's earlier Declaration admitted UNA manufactures and sells PEX with UI.  (*Id.*).  However, the Declarations are consistent – they state "Uponor, Inc . . . manufactures and sells, among other things . . . blue and red colored PEX and translucent PEX[,]" whereas "Uponor North America, Inc. is a Delaware corporation and holding company that does not manufacture PEX."  (Dkt. No. 10-2 at ¶¶ 3-4; Dkt. No. 24-2 at ¶¶ 3-4; Dkt. No. 25-2 at ¶¶ 3-4; Dkt. No. 67-2 at ¶¶ 3-4).  Plaintiffs cannot show an alter ego relationship based on Ms. Beissel's responsibilities at UNA and UI.[9,10]

---

[8] *Latham v. Technar, Inc.*, 390 F. Supp. 1031, 1037 (E.D. Tenn. 1974) ("presence of a common insurer as between the holding company and the wholly owned subsidiary does not automatically establish a single employer unit"); *Watters v. Kirk*, 2012 U.S. Dist. LEXIS 32465, at *7 (D.S.C. Mar. 12, 2012) (parent's "administrative role in procuring insurance for its subsidiary" is not "sufficient to support the assertion of personal jurisdiction" over the parent); *Trinity Indus. v. Greenlease Holding Co.*, 2014 U.S. Dist. LEXIS 61223, at *47 (W.D. Pa. May 2, 2014) ("No reasonable jury" could find alter ego relationship based on parent providing "insurance policies" to subsidiary because that is "consistent with the normal parent subsidiary relationship").

[9] *Anwar*, 876 F.3d at 849 (alter ego requires more than "shared management personnel"); *Ranza v. Nike*, 793 F.3d 1059, 1074 (9th Cir. 2015); *Beaulieu Grp., LLC v. Lefkowitz*, 2011 U.S. Dist. LEXIS 162332, at *19 (N.D. Ga. Mar. 24, 2011) (alter ego not established merely by showing an employee has dual responsibilities at two different companies).

[10] Plaintiffs' flawed and nonsensical logic is exposed when they claim Ms. Beissel's knowledge about what UNA does not do somehow shows "UNA does work regarding the sale and warranty of Uponor PEX in Tennessee including handling warranty claims from Tennessee."  (Opp. at 5).

c) **The "Uponor" Website and Twitter:** Plaintiffs cite to various statements and reports on www.uponor.com and Twitter which: (i) refer to "Uponor North America" as a "manufacturer in Minnesota" with "global headquarters in Helsinki, Finland"; (ii) refer to "production facility" and employees of "Uponor North America" in Minnesota; (iii) include a search tool for customers to find third-party retailers that sell "Uponor" plumbing products; and (iv) allude to California projects supposedly involving "Uponor North America". (Opp. at 5-6, 9-10). Plaintiffs' contentions in this regard are unfounded. Courts reject attempts to prove alter ego based on imprecise statements on corporate websites and materials affiliated entities share and use to present a unified image.[11] Moreover, the sworn Declarations before the Court establish that, despite presenting a unified image publicly, UC is a Finnish corporation; UI is the "Uponor" entity that manufactures and distributes PEX in Tennessee; and UNA is a mere holding company that does not control the daily operations of UI. (Schleiter Decl. ¶¶ 3-11; Rauterkus Decl. ¶¶ 4-5, 18, 25(b); Beissel Decl. ¶¶ 3-4). Finally, even taking the "Uponor" website, annual report materials, and Twitter feed at face value, they do not refer to, much less establish, any UNA contacts with **Tennessee**. While Plaintiffs contend these online statements **suggest** UNA manufacturers or distributes PEX which makes its way to Tennessee, this "stream-of-commerce" theory is contrary to U.S. Supreme Court and Sixth Circuit law. *Asahi Metal Indus. Co. v. Super. Ct..*, 480 U.S. 102, 112 (1987); *Parker v. Winwood*, 938 F.3d 833, 840 (6th Cir. 2019).

---

[11] *Anwar*, 877 F.3d at 849-850 (no alter ego where companies shared website and engaged in "common enterprise"); *Sivilli v. Wright Med. Tech., Inc.*, 2019 U.S. Dist. LEXIS 105416, at *12 (S.D. Cal. June 24, 2019) ("WMG is correct that 'courts recognize that separate corporate entities presenting themselves as one online does not rise to the level of unity of interests required to show companies are alter egos'"); *Payoda, Inc. v. Photon Infotech, Inc.*, 2015 U.S. Dist. LEXIS 100560, 2015 WL 4593911, at *3 (N.D. Cal. July 30, 2015) [*13] ("marketing puffery" on shared website "carries no weight" to establishing alter ego).

7
173126501v2
Case 3:23-cv-00497   Document 80   Filed 07/08/24   Page 8 of 13 PageID #: 2803

d) **UC's Annual Report**:[12] Plaintiffs contend UC's Annual Report "demonstrates that the Uponor entities are a single enterprise called 'Uponor Group' that is divided by geographic divisions with UC at the head." (Opp. at 6-10, 19-26). Plaintiffs note language alluding to a "Group strategy," an "Uponor-wide operating model," the "Group's overall internal control and risk management framework," limited overlap of operations and strategy, and "Group" financials. (*Id.*) Federal courts have consistently rejected attempts to establish alter ego via statements in SEC filings, press releases, and documents that present a parent and subsidiaries as a unified company, or that roll-up a subsidiary's financials into the parent.[13] UC's alleged oversight or management of subsidiaries at a macro-level is legally insufficient to justify an alter ego finding.[14] **Finally, UC is a Finnish corporation with no Tennessee contacts of its own**. (Rauterkus Decl. ¶¶ 1-13). Plaintiffs' attempt to conflate UC with UNA fails, especially where the Declaration of UC's CEO establishes: (a) UC, UI, and UNA are separately operating companies; and (b) the phrase "Uponor Group" is a shorthand for "Uponor" related entities in public-facing documents. (*Id.* ¶¶ 14-25).

e) **No Fraud or Injustice**: Plaintiffs incorrectly state they are not required to show fraud or injustice to establish jurisdiction via an alter ego theory. (Opp. at 25). In *Anwar*, the Sixth Circuit approved the Ninth Circuit's alter ego test for jurisdiction, which holds a plaintiff must establish "fraud or injustice" to pierce the corporate veil. 876 F.3d at 849, citing *Ranza*, 793 F.3d at 1073. The Middle District of Tennessee has similarly found piercing the corporate veil to confer

---

[12] Plaintiffs cite a Q4 2023 Uponor Corporation Financial Statements Bulletin with information similar to the Report which is also incapable of establishing personal jurisdiction via alter ego.

[13] Mot. at 13 n. 4; *see also, e.g.*, *Moody v. Charming Shoppes of Del., Inc.*, 2008 U.S. Dist. LEXIS 120585, *2-4 (N.D. Cal. May 20, 2008); *Surfside Non-Surgical Orthopedics P.A. v. Allscripts Healthcare Sols., Inc.*, 2019 U.S. Dist. LEXIS 93064, at *12 (N.D. Ill. June 4, 2019).

[14] Mot. at 13-14 and n. 5; *see also Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 651-652 (Tenn. 2009) ("A parent corporation's general involvement with the subsidiary corporation's performance, finance and budget decisions, and general policies and procedures does not provide a basis for attributing one corporation's contacts with the forum to the other").

jurisdiction requires proof that "parental dominion" of a subsidiary "is used to commit some fraud or wrong[,]" such as a "shell game for the purpose of eluding liabilities[.]" *Satellite Tracking of People, LLC v. G4S PLC*, 2009 U.S. Dist. LEXIS 143062, at *16, 18 (M.D. Tenn. Feb. 6, 2009); *see also Flake v. Schrader-Bridgeport Int'l, Inc.*, 2010 U.S. Dist. LEXIS 23951, at *23-25 (M.D. Tenn. Mar. 15. 2010) (same). Federal courts are in accord.[15] Plaintiffs make the brash assertion that "there would be injustice" if UNA were dismissed from this case. (Opp. at 26). If this type of conclusory assertion were sufficient, veil piercing would be the norm in cases involving non-resident companies whose subsidiary conducts business in the forum state – a result at odds with Tennessee, Sixth Circuit, and U.S. Supreme Court law. *Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014) (a rule cannot "stack[] the deck" by "always yield[ing] a pro-jurisdiction answer"). There is no evidence dismissing UNA would promote fraud or injustice, nor could there be where: (i) Plaintiffs are proceeding against UI; and (ii) there is no suggestion UI is inadequately capitalized or judgment-proof – to the contrary, Plaintiffs **own** evidence indicates UI is insured to the same extent as UNA, and there is no additional financial resource available to Plaintiffs by the presence of UNA. Plaintiffs have failed to make a prima facie alter ego showing between UNA and UI, the **only** Defendant with forum contacts. (*See* Mot. at 10-16).[16]

---

[15] *Voterlabs, Inc. v. Ethos Grp. Cons. Servs.*, LLC, 2021 U.S. Dist. LEXIS 179481, at *13 (D. Del. Sep. 21, 2021); *Lemaster v. Collins Indus.*, 2011 U.S. Dist. LEXIS 137030, at *13-14 (D. Kan. Nov. 29, 2011).

[16] Plaintiffs analogize to *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894 (6th Cir. 2017), but it is distinguishable. (Opp. at 25). **First**, *Schmuckle* did not involve alter ego. **Second**, non-resident holding companies sued the former CEO of the parent for breach of fiduciary duty and presented evidence the CEO availed himself of doing business in Michigan, where plaintiffs maintained an affiliated entity, by (i) traveling to Michigan "to meet with executives and customers", (ii) personally "directing and controlling" certain "operations in Michigan", and (iii) "arranging for the Michigan operations to pay part of his salary by instituting" a $1.5M+ "payment from [the Michigan entity] to" its German parent. *Id.* at 897-898, 901. Thus, "[i]t was reasonable for [the CEO] to have foreseen that his work with [the Michigan entity] would subject him to the jurisdiction of Michigan courts" in litigation instituted by the companies against him. *Id.* at 902. UNA is not suing any officer/director of an "Uponor" entity and Plaintiffs have not established that any of UNA's or UC's employees reached into Tennessee.

### 2. Plaintiffs' Agency Theory Also Fails

Plaintiffs assert UI and UNA "function as UC's representatives and agents in that [they] perform services that are significantly important to UC such that if UC did not have UI and UNA to perform them, UC would undertake to perform substantially similar services itself." (Opp. at 21; SAC ¶ 18). However: (i) the U.S. Supreme Court has rejected the use of an "agency" test to establish general jurisdiction, *Daimler AG,* 571 U.S. at 134-136; (ii) federal courts have held this "agency" test is forbidden when it comes to **specific** jurisdiction;[17] and (iii) Tennessee and federal law are clear that to establish jurisdiction via agency, a plaintiff must show the "parent corporation's control of [its] subsidiary corporation's internal affairs or daily operations[,]" and its "domination of the day-to-day business decisions of the subsidiary corporation."[18] Here, no competent evidence shows UC dominates or controls UNA or UI's day-to-day operations, or UNA dominates or controls UI's day-to-day affairs. Thus, no agency finding is possible.[19]

### C. Plaintiffs Cannot Water Down Their Burden of Proof

Plaintiffs incorrectly try to dilute their burden by claiming the Court should not consider UNA's evidence to the extent it conflicts with their materials. (Opp. at 29-30). Plaintiffs' alleged "evidence" consists of statements in online marketing materials, investor reports, and past lawsuits – i.e., information federal courts have repeatedly declined to consider when evaluating jurisdiction. Plaintiffs have failed to offer any sworn submission refuting UNA's sworn submissions provided in support of the Motion. Plaintiffs' silence is deafening. The Court should

---

[17] *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017) (*Daimler* prohibits parties from establishing general **or** specific jurisdiction under "agency" test).

[18] *Gordon*, 300 S.W.3d at 652-53; *see also Williams*, 851 F.3d at 1024 ("under any standard for finding an agency relationship" for specific jurisdiction, "the parent company must have the right to substantially control its subsidiary's activities.").

[19] Nevada Supreme Court found Las Vegas District Court lacked jurisdiction over UC where UC had not "moved beyond the establishment of general policy and direction for" UI or "taken over" UI's "day-to-day operations[.]" *Uponor Corp. v. Eighth Jud. Dist. Ct.*, 130 Nev. 1257 (2014).

not credit Plaintiffs' incompetent/inadmissible "evidence," and it certainly is "not require[d]" to "ignore" the "undisputed fact[s]" set forth in the Schleiter, Rauterkus, and Beissel Declarations now before it. *Ga. Gaming Inv., LLC v. Chi. Title & Tr. Co.*, 2021 U.S. Dist. LEXIS 180900, at *5 (W.D. Tenn. Sep. 22, 2021).

### D. Jurisdictional Discovery Is Not Warranted

Jurisdictional discovery "is not required based on speculation or hope[,]" and it is not enough for a plaintiff to "point[]" to alleged "omissions" in a defendant's declarations, and "merely speculat[e] that, if it is allowed to take jurisdictional discovery, these gaps . . . will be filled with facts . . . that show that this Court has specific jurisdiction over" the defendant. Discovery should be denied when a plaintiff "has given the Court no reason, other than its speculation, to believe that" facts supporting jurisdiction "would be found in discovery." *Shelter Mut. Ins. Co. v. Bissell Homecare, Inc.*, 2021 U.S. Dist. LEXIS 81340, at *14, 17-18 (M.D. Tenn. Apr. 28, 2021) (Richardson, J.) (quotations and citations omitted). Ignoring this law, the Opposition includes a request for jurisdictional discovery premised entirely on Plaintiffs' mistaken understanding of the facts and law. (Opp. at 31). Plaintiffs' conclusory request must be denied. *C.H. v. United States*, 818 Fed. App'x, 481, 484 (6th Cir. 2020) ("A plaintiff is not entitled to discovery if she cannot, at a minimum, "offer any factual basis for [her] allegations" and give the district court "a reasonable basis to expect that ... discovery would reveal" evidence that supports the claimed jurisdiction.").

Dated: July 8, 2024      By:     /s/ M. Andrew Pippenger
                                               M. Andrew Pippenger, BPR 018183
                                               Puryear Pippenger & Cook PLLC
                                               104 Woodmont Centre, Suite 201
                                               Nashville, TN 37205
                                               423-521-1201 (phone)
                                               apippenger@ppclaw.com

                                               *Attorney for Specially Appearing*
                                               *Defendant Uponor North America, Inc.*

# CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify that the foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF filing system which automatically sends email notifications of such filing to the following attorneys of record:

Andrew J. Pulliam (Tenn. BPR No. 016863)
James C. Bradshaw III (Tenn. BPR No. 013170)
J. Graham Matherne (Tenn. BPR No. 011294)
Ann Weber Langley (Tenn. BPR No. 038070)
WYATT, TARRANT & COMBS, LLP
333 Commerce Street, Suite 1050
Nashville Tennessee 37201
Telephone: (615) 244-0020
Fax: (615) 256-1726
Email: apulliam@wyattfirm.com
Email: jbradshaw@wyattfirm.com
Email: gmatherne@wyattfirm.com
Email: alangley@wyattfirm.com

*Attorneys for Plaintiffs*

/s/ M. Andrew Pippenger
M. Andrew Pippenger