# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| BRIAN CARRICO; KACIE CARRICO; DON GATLIN; and DORA GATLIN; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UPONOR, INC.; UPONOR NORTH AMERICA, INC.; UPONOR CORPORATION; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 3:23-CV-00497<br><br>District Judge Eli Richardson<br><br>Magistrate Judge Jeffrey S. Frensley |

## SPECIALLY APPEARING DEFENDANT UPONOR CORPORATION'S REPLY IN SUPPORT OF ITS DISMISSAL MOTION

I.  **APPLICABLE LAW MANDATES DISMISSAL OF UC FOR LACK OF JURISDICTION**[1]

   A.  **Plaintiffs Cannot Establish Jurisdiction Based on Outdated Decisions From Different Forums or a Prior Tennessee Action Involving UNA**

Plaintiffs postulate that the Court has jurisdiction over UC based on: (i) outdated case law addressing jurisdiction over UC in different forums; and (ii) UNA's involvement in a prior Tennessee state court action in 2019. (SAC ¶ 19; Opp. at 2, 6-9, 16, 22-23). This approach fails for multiple reasons.

**First**, Plaintiffs direct the Court to prior federal cases in which personal jurisdiction was extended over UC in Minnesota and Nevada – the *George*, and *Slaughter/Hartmann* cases. These prior decisions are neither precedential nor remotely binding on this Court. To the contrary, the U.S. Supreme Court has held, and made abundantly clear, that "personal jurisdiction requires a forum-by-forum [] analysis[,]" *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011), and thus, these prior cases are patently irrelevant to the propriety of jurisdiction over UC in Tennessee.

**Second**, these decisions – which were issued between 2008 and 2014 – were predicated on irrelevant, non-binding, and/or now-superseded personal jurisdiction standards. Specifically, in *George v. Uponor Corp.*, 988 F. Supp. 2d 1056 (D. Minn. 2013), the District Court found that UC did not have sufficient forum contacts to confer jurisdiction in Minnesota, but UI's contacts could be imputed to UC under an alter ego theory. *Id.* at 1063-1067. In so ruling, the District Court relied upon then applicable Eighth Circuit law holding that only "a degree of 'control or

---

[1] Plaintiffs' Opposition to UC's Motion focuses on the issue of personal jurisdiction. Plaintiffs incorporate by reference their contentions regarding arbitration and alternative grounds for dismissal in their Opposition to UI's Motion. (Opp. at 1-2 n. 1). To minimize the burden on the Court, UC also incorporates by reference, and asks the Court to consider/apply, the non-jurisdictional arguments in UI's Reply as being made on behalf of UC as well.

domination' by the parent over the subsidiary [was] necessary" to impute UI's contacts to UC, and explained that "rigid satisfaction of the alter ego test was not" required. *Id.* at 1064.

In marked contrast to the holding in *George*, both Tennessee and Sixth Circuit law are clear that "**the presumption of corporate separateness" can only be "overcome by demonstrating that the parent corporation 'exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice.'**" *Gordon v. Greenview Hosp., Inc.*, 300 S.W. 635, 651 (Tenn. 2009) (emphasis added). **In other words, "pervasive control over the subsidiary . . . from broad policy decisions to routine matters of day-to-day operation" is required**. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 848-849 (6th Cir. 2017) (emphasis added). Thus, under the current legal standard actually applicable in **this** case, far-more is required than a mere "degree of 'control and domination' by the parent over the subsidiary" – rather, the corporate form must be used to prop up "a sham or dummy corporation," or a parent company must have "complete control over the day-to-day affairs or operations" of the subsidiary, including "every decision" and "every action of the" subsidiary. *Hilani v. Greek Orthodox Archdiocese of Am.*, 863 F. Supp. 2d 711, 720-722 (W.D. Tenn. 2012). As established in UC's Motion, and as described below, Plaintiffs do not come close to making this required showing here.[2]

---

[2] Furthermore, the District Court in *George* ultimately issued a follow-up order clarifying that its ruling **was Minnesota-specific**, and that "[f]inding personal jurisdiction over Uponor Corp. in Minnesota . . . [did] not broadly expose [it] to jurisdiction in any state where [UI] conducts business." *George v. Uponor Corp.*, 988 F. Supp. 2d 1056, 1079 (D. Minn. 2014). Here, there is no allegation, nor could there be, that UI is incorporated or headquartered in Tennessee, and *George*'s analysis does not apply. Finally, to the extent the District Court in *George* relied on UC's statements in public-facing documents, consolidated financial statements, and webpages, this approach is also irreconcilable with Sixth Circuit law, as well as with the approach adopted by the majority of other federal courts. *See Anwar*, 876 F.3d at 849-850 (no alter ego relationship even though, among other things, the companies shared "a common website and engagement in a common enterprise" which only showed "possible macro-management" of the subsidiary by the parent); *see also* Mot. at 11-15.

**Third**, Plaintiff's reliance on **UNA's** litigation conduct in a low-value/short-lived subrogation action in Tennessee state court in 2019 (the "**Prior Tennessee Action**") is equally misplaced. (Opp. at 6-7). As set forth in UNA's Reply, statements from the Prior Tennessee Action are irrelevant to personal jurisdiction as to UNA—let alone UC. (Dkt. No. 80 at 2-4). Accordingly, these statements cannot confer jurisdiction over UC, which is a separate entity that was neither implicated by, nor referenced in, UNA's answer therein. (*Id.*).[3]

### B. Plaintiffs Fail to Satisfy the 3-Part Test for Specific Jurisdiction

Plaintiffs offer no evidence that UC designs, manufactures, sells, distributes or provides any warranty with regard to PEX at all, let alone in Tennessee, or has engaged in other forum activities that satisfy the Sixth Circuit's 3-part test for specific jurisdiction (*e.g.*, purposeful availment by UC; a claim arising from UC's forum activities; and forum contacts that are substantial enough to make the exercise of jurisdiction over UC reasonable). Instead, Plaintiffs attempt to satisfy the 3-part test for specific jurisdiction by: (1) directing the Court to Tennessee's long-arm statute – which supposedly confers jurisdiction over any defendant that causes injury in the State; and (2) claiming UC availed itself of the privilege of doing business in Tennessee through its "Building Solutions—North America" division. (Opp. at 10-14). Neither contention withstands scrutiny.

**First**, invocation of Tennessee's long-arm statute is specious because the "statute is coextensive with the limits of federal due process[,]" and "[t]herefore, the Court need only

---

[3] Plaintiffs do not cite any law for the proposition that a subsidiary's decision not to contest jurisdiction in one case can be used to bootstrap jurisdiction over: (i) a separate, parent company; in (ii) a completely separate matter. To the contrary, the law is clear that a party's decision to forego a jurisdictional challenge in one matter **does not** open the party up to subject matter jurisdiction in future lawsuits in the same forum, and it would turn this rule on its head if a party's decision to accept jurisdiction in one case was somehow binding on its corporate affiliate in an unrelated action filed years later by an entirely unrelated plaintiff. *Eight Mile Style, LLC v. Spotify USA, Inc.*, 2020 WL 1640425, at *4 (M.D. Tenn. Apr. 2, 2020).

determine whether exercise of personal jurisdiction over the defendants is consistent with federal due process." *Servpro Intellectual Prop. v. Zerorez Franchising Sys.*, 2018 U.S. Dist. LEXIS 114504, at *10 (M.D. Tenn. July 9, 2018). Thus, Plaintiffs' suggestion that the long-arm statute confers jurisdiction based on "even the slightest transaction" affecting Tennessee is patently irrelevant since Plaintiffs **still** must establish jurisdiction in accordance with **federal due process principles**, which they have failed to do. Indeed, Plaintiffs' authority confirms this. *See Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504-509 (6th Cir. 2014) (affirming order granting foreign corporation's motion to dismiss because although the corporation was subject to jurisdiction under Michigan's expansive long-arm statute, "a court in Michigan cannot exercise its personal jurisdiction in violation of [a defendant's] constitutional right to due process," and there was insufficient evidence to meet the federal 3-part test for specific jurisdiction).

**Second**, Plaintiffs invite the Court to infer that UC, a Finnish corporation that lacks Tennessee contacts, markets and distributes PEX in Tennessee because its Annual Report and a publicly available "Bulletin" state that UC's "Building Solutions—North America division" operates in the United States and generates substantial profits and sales. (Opp. at 12-14; *see also* UNA's Memorandum in support of its Motion (Dkt. No. 68-1) and the Rauterkus Declaration (Dkt. No. 69-2)). However, "a company does not purposefully avail itself merely by owning all or some of a corporation subject to jurisdiction"; rather, a plaintiff "must provide sufficient evidence for [a court] to conclude that [a parent company] is being brought into court for something that it has done, not for something that [a subsidiary] has done." *Dean v. Motel 6 Operating, L.P.*, 134 F.3d 1269, 1273 (6th Cir. 1998); *Moody v. Charming Shoppes of Del., Inc.*, 2008 U.S. Dist. LEXIS 120585, *2-4 (N.D. Cal. May 20, 2008) (parent corporation's use in its SEC report of phrases such as "we hire," "our employees," and "we operated 2,409 stores in 48 states," was insufficient to

4
173169442v3
Case 3:23-cv-00497    Document 81    Filed 07/08/24    Page 5 of 10 PageID #: 2813

confer personal jurisdiction); *Surfside Non-Surgical Orthopedics P.A. v. Allscripts Healthcare Sols., Inc.*, 2019 U.S. Dist. LEXIS 93064, at *12 (N.D. Ill. June 4, 2019) ("Courts have also found that inclusive references in public filings are common practice" that do not warrant disregarding the corporate form). Put simply, "personal jurisdiction [over] a subsidiary does not lead to automatic personal jurisdiction of a parent corporation unless there is evidence that the parent acts as an alter ego of the subsidiary." *Univ. of the S. v. S. Univ., LLC,* No. 4:09-cv-71, 2009 U.S. Dist. LEXIS 146729, at *8 (E.D. Tenn. Nov. 20, 2009).

Here, Plaintiffs **admit** the reference in UC's Annual Reports to a "Building Solutions—North America" division **does not** correspond to an operating division **within UC itself**.[4] Instead, Plaintiffs claim UI – which is a separate and distinct entity – somehow functions as UC's de facto "Building Solutions—North America division[.]" (Opp. at 14-17). Because Plaintiffs concede they cannot satisfy the purposeful availment test based on **UC's own** conduct, specific jurisdiction is lacking. *See Monaco Indus., LLC v. Fomento Econ. Mexicano S.A.B. de C.V.*, 2023 U.S. Dist. LEXIS 133113, at *20 (E.D. Tenn. Aug. 1, 2023) (no personal jurisdiction over Mexican holding company "based solely on the conduct of its subsidiaries," and recognizing that even "[d]eriving substantial revenue from a subsidiary that is subject to the jurisdiction of the court in the forum state, alone, is not enough for a court to have jurisdiction over the subsidiary's parent company.").[5]

---

[4] Plaintiffs also ignore the facts included in the Rauterkus Declaration, filed concurrently with UC's Motion (Dkt. No. 69-2), wherein UC's CEO establishes that the phrase "Uponor Group" is simply a convenient shorthand used to refer to "Uponor" related entities in various public-facing documents. (*See id*. at ¶¶ 14-25).

[5] *See also Guagliano v. Cameron & Cameron Custom Homes, LLC*, 2019 U.S. Dist. LEXIS 77703, at *6 (D.S.C. May 8, 2019); *Shirley v. Goodyear Tire & Rubber Co.*, 2005 U.S. Dist. LEXIS 63524, at *11-12 (W.D. Tenn. Mar. 31, 2005).

Having failed to establish that **UC itself** purposefully conducted business in Tennessee, Plaintiffs also cannot establish the other required elements of jurisdiction (*e.g.*, their claims arise from UC's non-existent forum contacts, or that it would be reasonable to exercise jurisdiction over UC, a foreign entity incorporated and headquartered in Finland). *See Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 115 (1987) ("Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.").[6] Instead, Plaintiffs rely on mere speculation and offer no evidence that UC manufactures, sells, distributes or provides any warranty with regard to PEX at all, let alone in Tennessee, or has engaged in other forum activities that satisfy the Sixth Circuit's 3-part test for specific jurisdiction (*e.g.*, purposeful availment by UC; a claim arising from UC's forum activities; and forum contacts that are substantial enough to make the exercise of jurisdiction over UC reasonable).

### C. Plaintiffs' Alternative Alter Ego Theory Fails

Plaintiffs double-down on the SAC's allegation that UI and UNA "function as [UC's] representative and agents" because they allegedly "perform services that are significantly important to [UC]," and without its subsidiaries, UC "would undertake to perform substantially similar services itself." (Opp. at 14-20; SAC ¶ 18). This position fails because: (i) the operative facts undermine Plaintiffs' position; (ii) Plaintiffs again are forced to rely on outdated and inapplicable case law (namely, *George*, *Slaughter*, and *Hartmann*);[7] (iii) Plaintiffs ignore that the

---

[6] Plaintiffs' authority regarding purposeful availment is not on point. *See Mott v. Schelling & Co.*, 1992 U.S. App. LEXIS 13273, at *14-19 (6th Cir. 1992) (finding jurisdiction over Austrian saw manufacturer that injured plaintiff because the manufacturer: (i) "knew the ultimate destination of each saw" it produced; (ii) "had to know that the saw was going to Michigan since it sent one of its technicians to install and demonstrate the Machine"; and (iii) the manufacturer was essentially selling directly to the consumer through its U.S. distributor).

[7] Again, Plaintiffs' authority is distinguishable. *See Valentine v. SSC Newport Operating Co. LLC*, No. 2:19-CV-00147, 2020 WL 7018265, at *5 (E.D. Tenn. Mar. 30, 2020) (jurisdiction exercised

6
1731694442v3
Case 3:23-cv-00497   Document 81   Filed 07/08/24   Page 7 of 10 PageID #: 2815

Supreme Court has, subsequent to the decisions it is relying on, rejected this type of "agency" test for general jurisdiction (*Daimler AG v. Bauman*, 571 U.S. 117, 134-136 (2014)); (iv) the Ninth Circuit held that such a test is impermissible for specific jurisdiction (*Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017)); and (v) Tennessee and federal law hold that to the extent specific jurisdiction can be shown via an "agency" test at all, a plaintiff must show a "parent corporation's control of [its] subsidiary corporation's internal affairs or daily operations[,]" and its "domination of the day-to-day business decisions of the subsidiary corporation." *Gordon*, 300 S.W.3d at 652-653; *see also Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 56 (N.D. Cal. 2020) ("to the extent the agency theory remains viable in the specific personal jurisdiction context, it operates like the alter ego test" and requires "pervasive control" over a subsidiary's "internal affairs or daily operations"). Dispositively, here Plaintiffs provide no evidence that UC dominates or pervasively controls the day-to-day operations or affairs of UI or UNA – including failing to submit any sworn declaration or other materials rebutting the of the Declarations submitted by UC and UNA. Thus, no agency finding is possible.[8]

### D. Jurisdictional Discovery Is Not Warranted

A plaintiff's "speculation or hope" that relevant information exists is not sufficient to justify jurisdictional discovery. *Shelter Mut. Ins. Co. v. Bissel Homecare, Inc.*, 2021 U.S. Dist.

---

over a parent corporation that admittedly shared employees, resources, and addresses with a subsidiary, and they both held themselves out as a single entity and were controlled by one person); *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 897-898, 901-902 (6th Cir. 2017) (finding purposeful availment where: (i) non-resident CEO traveled to Michigan multiple times "to meet with executives and customers"; (ii) personally "direct[ed] and control[ed]" certain "operations in Michigan", and (iii) "arrang[ed] for the Michigan operations to pay part of his salary by instituting" a $1.5M+ "payment from [the Michigan entity] to" its German parent; such that (iv) "[i]t was reasonable for [the CEO] to have foreseen that his work with [the Michigan entity] would subject him to the jurisdiction of Michigan courts")

[8] Plaintiffs also assert they are not required to show fraud or injustice to establish jurisdiction via alter ego. Plaintiffs are wrong in this assertion. *See, e.g., Anwar*, 876 F.3d at 849, citing *Ranza*, 703 F.3d at 1073; *see also* UNA's Reply (Dkt. No. 80 at 8-9).

LEXIS 81340, at *14, 17-18 (M.D. Tenn. Apr. 28, 2021) (Richardson, J.). Thus, a plaintiff "must do more than 'merely assert' the need for discovery; [it] must 'explain what evidence relevant to jurisdiction'" it is seeking, and provide "a reasonable basis to expect that [] discovery would reveal" evidence conferring jurisdiction over the defendant. *C.H. v. United States*, 818 Fed. App'x 481, 484 (6th Cir. 2020). Plaintiffs flout these principles by asking, in conclusory fashion, for broad and unspecified discovery "regarding UC and UNA's activities directed to the United States" (Opp. at 25) – a request which, on its face, potentially encompasses vast amounts of sensitive, confidential, and proprietary financial information. Were this sufficient, jurisdictional discovery would be automatic in every instance where a defendant contested personal jurisdiction since a plaintiff could always make a boilerplate request for information concerning "activities directed towards" the forum in order to explore its speculative theories of jurisdiction. Of course, such discovery is not automatic, and Plaintiffs have not shown good cause for it here.

Dated: July 8, 2024  By:   /s/ M. Andrew Pippenger
M. Andrew Pippenger, BPR 018183
Puryear Pippenger & Cook PLLC
104 Woodmont Centre, Suite 201
Nashville, TN 37205
423-521-1201 (phone)
apippenger@ppclaw.com

*Attorney for Specially Appearing Defendant Uponor Corporation*

# CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify that the foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF filing system which automatically sends email notifications of such filing to the following attorneys of record:

Andrew J. Pulliam (Tenn. BPR No. 016863)
James C. Bradshaw III (Tenn. BPR No. 013170)
J. Graham Matherne (Tenn. BPR No. 011294)
Ann Weber Langley (Tenn. BPR No. 038070)
WYATT, TARRANT & COMBS, LLP
333 Commerce Street, Suite 1050
Nashville Tennessee 37201
Telephone: (615) 244-0020
Fax: (615) 256-1726
Email: apulliam@wyattfirm.com
Email: jbradshaw@wyattfirm.com
Email: gmatherne@wyattfirm.com
Email: alangley@wyattfirm.com

*Attorneys for Plaintiffs*

/s/ M. Andrew Pippenger
M. Andrew Pippenger