IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRIAN CARRICO, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UPONOR, INC., et al., ) <br> ) <br> Defendants. ) <br> ) | NO. 3:23-cv-00497 <br><br> JUDGE RICHARDSON |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is "Plaintiffs' Motion To Reconsider Finding In Memorandum Opinion (ECF #83) Footnote 26, Or, Alternatively, Motion To Certify Bargaining Issue To Tennessee Supreme Court" (Doc. No. 90, "Motion"), filed by Plaintiffs, Brian Carrico, Kacie Carrico, Don Gatlin, and Dora Gatlin. Accompanying the Motion is a brief in support of the Motion (Doc. No. 91, "Brief"). For the reasons described herein, the Court **DENIES** the Motion in its entirety.

## Background

The reader's familiarity of this case is presumed. The Court will provide only a brief overview of the factual background of this case, which is further detailed in the Court's memorandum opinion issued on March 31, 2025 (Doc. No. 83 at 2-5, "Memorandum Opinion"), before then providing an overview of the relevant procedural history necessary to resolve the Motion.

This case is, in brief, a putative class action arising out of allegedly defective polyethylene tubing ("PEX"). (*See generally* Doc. No. 93).[1] Plaintiffs allege that as a result of the allegedly defective PEX, Plaintiffs' homes and other property has been damaged. (*Id.* at ¶¶ 38–39, 62).

On March 31, 2025, the Court issued its Memorandum Opinion (Doc. No. 83) denying Defendant Uponor, Inc's "Motion to Compel Arbitration or, Alternatively, to (1) Dismiss Plaintiffs' Second Amended Complaint and Class Allegations, and (2) Strike Class Allegations" (Doc. No. 67, "UI's Motion"), Defendant Uponor North America, Inc.'s "Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to (1) Compel Arbitration, (2) Dismiss Plaintiffs' Second Amended Complaint and Class Allegations, and (3) Strike Class Allegations," (Doc. No. 68, "UNA's Motion"), and Defendant Uponor Corporation's "Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to (1) Compel Arbitration, (2) Dismiss Plaintiffs' Second Amended Complaint and Class Allegations, and (3) Strike Class Allegations" (Doc. No. 69, "UC's Motion," and, collectively with UI's Motion and UNA's Motion "Defendants' Motions"). The Memorandum Opinion was issued with an accompanying order (Doc. No. 84, "Order").

Plaintiffs filed responses in opposition (Doc. No. 72, Doc. No. 73, and Doc. No. 75) to all three of Defendants' Motions. As relevant here, on pages 22-23 of Plaintiffs' response filed at Docket No. 72 (Doc. No. 72, "Response"), which Plaintiffs also cite in their Brief, Plaintiffs argued that:

> The ELR only applies when there is a contract for sale of goods against which a plaintiff has the ability to assert claims. Federal cases applying Tennessee law acknowledge this. *Autozone, Inc. v. Glidden Co.*, 737 F. Supp.2d 936, 950-51 (W.D. Tenn. 2010) ("***in a contract for sale of goods*** . . . , [t]he economic loss rule requires purchasers suffering purely economic losses to seek a remedy in contract, not in tort" (emphasis added)); *Williams v. BMW of North America, LLC*, 514 F.

---

[1] Since the entry of the Court's Memorandum Opinion, which addressed the Second Amended Complaint (Doc. No. 65, "SAC"), Plaintiffs have filed a Third Amended Complaint (Doc. No. 93) and now seek leave to file a Fourth Amended Complaint (Doc. No. 101). For the purposes of the present Motion, the Court cites to the Third Amended Complaint as the operative complaint for all factual allegations.

> Supp.3d 1036, 1042 (E.D. Tenn. 2021) ("The general idea behind the economic loss rule is simple enough: **parties to a contract** should not be free to pursue remedies in tort just because they later turn out to be unhappy with the contractual remedies that they negotiated." (emphasis added)).
>
> The *Commercial Painting Co.* case made clear that Tennessee's ELR only applies when a plaintiff's claim is based on a sale of goods contract. "*Trinity Industries* was a case involving the sale of goods, and ***the economic loss doctrine applied because a claim based on a contract for sale of goods is governed by the UCC***." *Commercial Painting Co.*, 676 S.W.3d at 539 (emphasis added). Here, however, Plaintiffs' claims are not based on a contract for sale of goods. See SAC Counts I-III at ¶¶ 101-28. Thus, the ELR does not apply to Plaintiffs' claims.
>
> \*\*\*
>
> Here, as alleged in the SAC, the duties violated by Defendants are strict liability and negligence duties and not contractual duties. Plaintiffs are ordinary consumers who purchased homes in which a third party incorporated Defendants' product. The resulting damages caused by the defects in that product provide the basis for Plaintiffs' strict product liability and negligence claims. The ELR has no application because there was no contract negotiation in which Plaintiffs or Class members could have negotiated or did negotiate related to any potential defects of the Uponor PEX.

(Doc. No. 72 at 22-23) (footnotes omitted).

As relevant here, and as also cited in Plaintiffs' Brief, Plaintiffs' Response makes a further assertion in footnote 13 that:

> Other Tennessee cases likewise make clear that the ELR only applies to claims where there is a contract related to the product at issue against which a plaintiff has a bargained-for ability to assert claims. *See Lincoln General Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487, 489 (Tenn. 2009); *City of Franklin v. W.L. Hailey & Co., Inc.*, 634 S.W.3d 16, 34 (Tenn. Ct. App. 2019); *Trinity Indus., Inc. v. McKinnon Bridge Co., Inc.*, 77 S.W.3d 159, 171 (Tenn. Ct. App. 2001), *overruled on other grounds by Bowen ex rel Doe v. Arnold*, 502 S.W.3d 102 (Tenn. 2016). That is not the case here.

(Doc. No. 72 at 23 n.13, "Footnote 13").

Characterizing Plaintiffs' argument above, the Memorandum Opinion states as follows in footnote 26:

> The Court notes that Plaintiffs argue merely that the economic loss rule is inapplicable because they did not enter into contracts for the sale of goods with Defendants. Plaintiffs do not argue that the economic loss rule is inapplicable because (i) they purchased their homes in a real estate transaction, to which the UCC and its remedies do not apply, (ii) UCC remedies must be available to a plaintiff against a defendant for the rule to apply, and (iii) such remedies are not otherwise available to them. This argument has been raised elsewhere. *See America's Collectibles Network*, 2011 WL 2118574 at *5 (predicting that the Tennessee Supreme Court would not apply the economic loss rule in lawsuits not involving UCC remedies); *Lott v. Swift Transp. Co.*, 694 F. Supp. 2d 923, 931 (W.D. Tenn. 2010) (same); *Ham v. Swift Transp. Co.*, 694 F. Supp. 2d 915, 923 (W.D. Tenn. 2010) (same); *Broadnax v. Swift Transp. Co.*, 694 F. Supp. 2d 947, 954 (W.D. Tenn. 2010) (same); see also *Corso Enterprises, Inc. v. Shop at Home Network, Inc.*, No. 3:04-0260, 2005 WL 2346986, at *7 n.8 (M.D. Tenn. Sept. 26, 2005) (no UCC-based economic loss rule where the UCC was inapplicable); *Commercial Painting*, 676 S.W.3d at 554 (noting that real-estate transactions are not protected by the UCC, which has led to criticism against the application of the economic loss rule to a contract for the construction of a home) (Campbell & Bivins, JJ., dissenting). But because Plaintiffs have not raised this issue, the Court will not analyze it.

(Doc. No. 83 at 44 n.26, "Footnote 26").

Plaintiffs make two requests of the Court via their Motion.

First, Plaintiffs request that this Court reconsider its finding in Footnote 26 of its Memorandum Opinion that "Plaintiffs did not make the argument that the economic loss rule is inapplicable because they purchased their homes in real estate transactions to which the UCC does not apply." (Doc. No. 91 at 1). Plaintiffs assert instead that on pages 22-23 of their Response (the same provisions repeated above), Plaintiffs "argued that the economic loss rule is inapplicable because they purchased their homes in a real estate transaction to which the UCC does not apply." (*Id.* at 2). Plaintiffs further state that "manifest injustice will result if the Court rules that Plaintiffs' claims arising from their home purchases are barred by the economic loss rule." (*Id.* at 6).

Second, Plaintiffs request that this Court alternatively certify the following question to the Tennessee Supreme Court:

> Does Tennessee require that parties had sufficient bargaining power between them as a mandatory prerequisite before Tennessee's economic loss rule may be applied to bar a product liability claim?

(*Id.* at 2, "Bargaining Issue").

Plaintiffs argue that the Bargaining Issue "should be certified to the Tennessee Supreme Court because [the Bargaining Issue] is a novel issue not previously decided under Tennessee law and the [Bargaining Issue] would be dispositive of Defendants' economic loss rule defense in this case." (*Id.* at 2).

Analysis

1. <u>Motion to Reconsider</u>

As Plaintiffs correctly note, the Federal Rules do not explicitly permit motions to reconsider. (Doc. No. 91 at 2). However, Rule 54(b) of the Federal Rules of Civil Procedure gives district courts broad discretion to revise interlocutory orders under certain circumstances. *See Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004).[2] "This authority allows district courts to 'afford such relief from [interlocutory orders] as justice requires." *Id.* (quoting *Citibank N.A. v. Fed. Deposit Ins. Corp.*, 857 F. Supp. 976, 981 (D.D.C. 1994)). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959. "This standard obviously vests significant discretion in district courts." *Id.* at 959 n.7. Thus, the Court will consider Plaintiffs' Motion to reconsider under Rule 54.

---

[2] To the extent that there is doubt here, the Court notes that its Memorandum Opinion's (Doc. No. 83) accompanying Order (Doc. No. 84), is an interlocutory order since the Order does "does 'not constitut[e] a final resolution of the whole controversy.'" *Valentine v. Health & Wellness Lifestyle Clubs, LLC*, No. 20-4341, 2022 WL 2903444, at *3 (6th Cir. July 22, 2022) (quoting Interlocutory, Black's Law Dictionary (11th ed. 2019)). *See also Jackson v. Shultz*, 429 F.3d 586, 589 (6th Cir. 2006) ("The denial of a motion to dismiss is generally considered interlocutory").

"Several courts interpret the phrase 'manifest injustice' to mean an error that is 'direct, obvious, and observable. . . . apparent to the point of being indisputable." *Shelbyville Hosp. Corp. v. Mosley*, No. 4:13-CV-88, 2017 WL 2275002, at *3 (E.D. Tenn. May 24, 2017) (quoting *Block v. Meharry Med. Coll.*, No. 3:15-CV-00204, 2017 WL 1364717, at *1 (M.D. Tenn. Apr. 14, 2017)). *See also Kirk v. Corr. Corp. of Am.*, No. 1:16-00031, 2017 WL 3172738, at *5 (M.D. Tenn. July 26, 2017) (collecting cases finding the same), *report and recommendation adopted sub nom. Kirk v. Correction Corp. of Am.*, No. 1:16-CV-00031, 2017 WL 3581094 (M.D. Tenn. Aug. 18, 2017). "[F]or a court to reconsider a decision due to 'manifest injustice,' the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view it." *Block*, 2017 WL 1364717, at *1 (quoting *In re Roemmele*, 466 B.R. 706, 712 (Bankr. E.D. Pa. Mar. 14, 2012)) (internal quotation marks omitted). Thus, "[t]o grant relief based on manifest injustice, the Court must have erred." *Maisano v. Sterling Heights Dodge, Inc.*, No. 2:18-CV-10702, 2022 WL 446741, at *6 (E.D. Mich. Feb. 14, 2022) (citing Black's Law Dictionary (11th ed. 2019)) ("A '[m]anifest injustice' is '[a] direct, obvious and observable error in trial court.'").

The Court will address in turn each of Plaintiffs' two above-referenced arguments for reconsideration: (1) that Plaintiffs "argued that the economic loss rule is inapplicable because they purchased their homes in a real estate transaction to which the UCC does not apply" (Doc. No. 91 at 2) on pages 22-23 of their Response, contrary to Footnote 26's interpretation; and (2) that "manifest injustice will result if the Court rules that Plaintiffs' claims arising from their home purchases are barred by the economic loss rule." (*Id.* at 6). In effect, both of these arguments are the same since "[t]o grant relief based on manifest injustice, the Court must have erred," *Maisano*, 2022 WL 446741, at *6, and the only error that Plaintiffs allege is the Court's purported

misapprehension of Plaintiffs' argument reflected in Footnote 26. Accordingly, the Court assesses whether there is any error in Footnote 26.

As explained further below, the Court finds no error in Footnote 26's challenged statement, which, to reiterate, is the following:

> Plaintiffs argue merely that the economic loss rule is inapplicable because [Plaintiffs] did not enter into contracts for the sale of goods with Defendants. Plaintiffs do not argue that the economic loss rule is inapplicable because (i) they purchased their homes in a real estate transaction, to which the UCC and its remedies do not apply, (ii) UCC remedies must be available to a plaintiff against a defendant for the rule to apply, and (iii) such remedies are not otherwise available to them. . . . [B]ecause Plaintiffs have not raised this issue, the Court will not analyze it.

(Doc. No. 83 at 44 n.26).

A review of the passages in Plaintiffs' Response, which are also quoted both in Plaintiffs' Brief and above, buttresses the Court's previous interpretation in Footnote 26. Turning to the first two paragraphs that Plaintiffs cite in their Brief, these paragraphs provide:

> The ELR [economic loss rule] only applies when there is a contract for sale of goods against which a plaintiff has the ability to assert claims. Federal cases applying Tennessee law acknowledge this. *Autozone, Inc. v. Glidden Co.*, 737 F. Supp.2d 936, 950-51 (W.D. Tenn. 2010) ("**in a contract for sale of goods** . . . , [t]he economic loss rule requires purchasers suffering purely economic losses to seek a remedy in contract, not in tort" (emphasis added)); *Williams v. BMW of North America, LLC*, 514 F. Supp.3d 1036, 1042 (E.D. Tenn. 2021) ("The general idea behind the economic loss rule is simple enough: **parties to a contract** should not be free to pursue remedies in tort just because they later turn out to be unhappy with the contractual remedies that they negotiated." (emphasis added)).
>
> The *Commercial Painting Co.* case made clear that Tennessee's ELR only applies when a plaintiff's claim is based on a sale of goods contract. "*Trinity Industries* was a case involving the sale of goods, and **the economic loss doctrine applied because a claim based on a contract for sale of goods is governed by the UCC**." *Commercial Painting Co.*, 676 S.W.3d at 539 (emphasis added). Here, however, Plaintiffs' claims are not based on a contract for sale of goods. *See* SAC Counts I-III at ¶¶ 101-28. Thus, the ELR does not apply to Plaintiffs' claims.

(Doc. No. 72 at 22-23) (footnote omitted).

These paragraphs set forth exactly the argument that Footnote 26 claims is Plaintiffs' argument: "merely that the economic loss rule is inapplicable because [Plaintiffs] did not enter into contracts for the sale of goods with Defendants." (Doc. No. 83 at 44 at n.26). There is no reference to real estate in the above-quoted paragraphs, and the only reference to the UCC is again in the context of a contract for sale of goods. To read this argument otherwise would be to recognize a new argument for Plaintiffs that they did not actually make in their Response, which this Court will not do. *See e.g., McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

Turning to the last paragraph Plaintiffs cite, it provides:

> Here, as alleged in the SAC, the duties violated by Defendants are strict liability and negligence duties and not contractual duties. Plaintiffs are ordinary consumers who purchased homes in which a third party incorporated Defendants' product. The resulting damages caused by the defects in that product provide the basis for Plaintiffs' strict product liability and negligence claims. The ELR has no application because there was no contract negotiation in which Plaintiffs or Class members could have negotiated or did negotiate related to any potential defects of the Uponor PEX.

(Doc. No. 72 at 23).

This paragraph is yet more of the same. Although it is true that this paragraph states that Plaintiffs "purchased homes," this statement is made *only* in the context of distinguishing the basis on which Plaintiffs allege Defendants are liable, (that is, under strict liability or negligence duties as opposed to breach of contract). Indeed, the last sentence of the paragraph sums up by arguing that the economic loss rule "has no application because there was no contract negotiation in which Plaintiffs or Class members could have negotiated." (Doc. No. 72 at 23). Even straining to read this paragraph in a way favorable to the Motion, the Court fails to see where Plaintiffs "argued that the economic loss rule is inapplicable because they purchased their homes in real estate

transactions to which the UCC does not apply." (Doc. No. 91 at 2). Rather, it is clear that Plaintiffs here are making the argument, as Footnote 26 correctly surmised, only that "the economic loss rule is inapplicable because [Plaintiffs] did not enter into *contracts* for the sale of goods with Defendants." (Doc. No. 83 at 44 n. 26) (emphasis added).[3]

Perhaps Plaintiffs wish to make that new argument *now* or in the *future*. But that makes no difference on the instant Motion, which asserts that the Court committed error in construing what Plaintiffs argued *previously* (in their Response).[4]

Thus, the Court can see no conceivable error in its original interpretation of Plaintiffs' briefing in Footnote 26 of its Memorandum Opinion. Accordingly, the Court cannot grant Plaintiffs' requested relief under Rule 54 based on any purported error in Footnote 26 or "based on manifest injustice." *Maisano*, 2022 WL 446741, at *6; *Shelbyville Hosp. Corp.*, 2017 WL 2275002, at *3.

2. Motion to Certify to the Tennessee Supreme Court

Turning to Plaintiffs' request for certification of the Bargaining Issue to the Tennessee Supreme Court, "[t]he decision whether or not to utilize a certification procedure lies within the sound discretion of the district court." *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 449-50 (6th Cir. 2009) (quoting *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372

---

[3] Plaintiffs do not seem to advance that Footnote 13 makes the argument "that the economic loss rule is inapplicable because [Plaintiffs] purchased their homes in real estate transactions to which the UCC does not apply." (Doc. No. 91 at 2). To the extent that Plaintiffs do make this argument, the Court rejects it because Footnote 13 is only concerned with whether the "ELR . . . applies to claims where there is a contract related to the product at issue against which a plaintiff has a bargained-for ability to assert claims." (Doc. No. 72 at 23 n.13).

[4] More broadly, the Court questions the necessity of bringing the Motion. Footnote 26, the sole part of the Order of which Plaintiffs request reconsideration, is mere dicta (since Plaintiffs prevailed on Defendants' Motions anyway) and simply notes that Plaintiffs did not make a particular argument in their briefing on Defendants' Motions. To the extent that Plaintiffs wish to make that argument in the future, there is nothing in Footnote 26 that dictates (or even suggests) that they may not do so.

(6th Cir. 1995)) (internal quotation marks omitted). "Certification 'is most appropriate when the question is new and state law is unsettled.'" *Id.* at 450 (quoting *Transamerica*, 50 F.3d at 372). "'[H]owever, the federal courts will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves.'" *Id.* (quoting *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007)). *See also Transamerica*, 50 F.3d at 372 (finding Kentucky law to be "relatively settled" even when "Kentucky had not addressed the exact question at issue" because "[Kentucky] does have well established principles to govern the interpretation of insurance contracts" (which were at issue in the case)).

With respect to the Tennessee Supreme Court in particular, Tenn. Sup. Ct. R. 23 § 1 provides certification is appropriate where (1) "there are questions of law of this state which *will* be determinative of the cause"; and (2) "as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee." (emphasis added). *See also BKB Properties, LLC v. SunTrust Bank*, 453 Fed. App'x 582, 588 (6th Cir. 2011) (discussing Tenn. Sup. Ct. R. 23 § 1).[5]

"A question of law is 'determinative of the cause' if it is claim-dispositive.'" *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 147 F. Supp. 3d 694, 700 (W.D. Tenn. 2015) (citing *Becker v. Ford*

---

[5] In addressing some of the "concerns about overuse of the certified question process," the Tennessee Supreme Court has noted that "certifying a question is not always the best option. Federal courts are, of course, permitted to decide issues of state law in cases over which they have jurisdiction, as we may decide issues of federal law in cases over which we have jurisdiction. In our system, it is commonplace for a question of law to be decided first by a court other than the court empowered to resolve the question definitively." *Seals v. H & F, Inc.*, 301 S.W.3d 237, 241 n.3 (Tenn. 2010).

Moreover, the Sixth Circuit has cautioned that although "[t]here is nothing to bar a party from suggesting the desirability of certification . . . the court should be slow to honor a request for certification from a party who chose to invoke federal jurisdiction." *Loc. 219 Plumbing & Pipefitting Indus. Pension Fund v. Buck Consultants, LLC*, 311 F. App'x 827, 832 (6th Cir. 2009) (quoting Arthur R. Miller, Edward H. Cooper, Vikram David Amar, Federal Practice & Procedure § 4248 (2008)) (internal quotation marks omitted).

*Motor Co.*, No. 1:13-CV-276-SKL, 2013 WL 6046080, at *2 (E.D. Tenn. Nov. 13, 2013)). Where the question merely *may* be determinative, federal courts in Tennessee have declined to certify a question to the Tennessee Supreme Court. *Thompson Rsch. Grp., LLC v. Winnebago Indus., Inc.*, No. 3:17-CV-01595, 2020 WL 12932418, at *2 (M.D. Tenn. Mar. 23, 2020) ("The Court concludes that certification of the proposed questions is not warranted because resolution of those questions *may* not be determinative of the case . . . The proposed questions assume certain facts have been established and are determinative only if one views the disputed facts in Defendant's favor." (emphasis added)).

As noted above, Plaintiffs request that this Court certify the following question to the Tennessee Supreme Court:

> Does Tennessee require that parties had sufficient bargaining power between them as a mandatory prerequisite before Tennessee's economic loss rule may be applied to bar a product liability claim?

(Doc. No. 91 at 2, "Bargaining Issue").[6]

Here, the Court need not reach a determination of whether the Bargaining Issue is novel or whether there is controlling Tennessee Supreme Court precedent on the Bargaining Issue, because the question which Plaintiffs seek to have certified is not, at this moment, "determinative of the cause." Tenn. Sup. Ct. R. 23 § 1.

Plaintiffs argue that the Bargaining Issue "*could* be dispositive of the whole case" because it "would be dispositive of Defendants' economic loss rule defense," a defense which Plaintiffs anticipate being raised in "further motions . . . to be filed by Defendants." (Doc. No. 91 at 7) (emphasis added). This is true enough; however, Plaintiffs' own argument gives away the game.

---

[6] Plaintiffs' argument (Doc. No. 91 at 6-7) that Plaintiffs previously raised the Bargaining Issue in Footnote 13 of their Response and on pages 22-23 of that Response is well taken. Accordingly, the Court does not treat the Bargaining Issue as waived.

Even if an issue "could be dispositive" of a claim at some point, that is not sufficient to permit certification under Tenn. Sup. Ct. R. 23 § 1 which requires that an issue "*will* be determinative of the cause." (emphasis added). So, that the Bargaining Issue may at some indeterminate point become determinative of the cause is not sufficient to permit certification of the Bargaining Issue to the Tennessee Supreme Court at this juncture. *Thompson*, 2020 WL 12932418, at *2 (rejecting certification of certain questions when "resolution of those questions may not be determinative of the case" since "[t]he proposed questions assume certain facts have been established and are determinative only if one views the disputed facts in Defendant's favor.").

Moreover, a resolution by the Tennessee Supreme Court of the Bargaining Issue would have absolutely no bearing on—let alone be dispositive of—this case unless the economic loss rule applies to Plaintiffs' claims. And the Court has not yet determined whether the economic loss rule applies to (and thereby bars) Plaintiffs' claims. (Doc. No. 83 at 42). In its Memorandum Opinion, the Court stated that "the Tennessee Supreme Court would likely find that homes containing PEX piping—such as Plaintiffs'—rather than the PEX piping itself, are the 'product' if purchased with the PEX already installed," thus leading to the application of the economic loss rule to Plaintiffs' homes. (*Id.* at 42). However, the Court explicitly noted in its Memorandum Opinion that it could not make "a conclusive finding regarding *Plaintiffs' homes in particular* because the SAC is silent on critical issues," including:

> . . . whether the PEX was an addition or modification to Plaintiffs' homes and other structures, *i.e.*, whether the PEX was installed before or after Plaintiffs purchased their homes. . . . [and] whether the allegedly damaged items were originally part of Plaintiffs' properties or added thereto after Plaintiffs' initial purchase.

(*Id.* at 42-43).

As a reminder, the Court relied on the SAC (Doc. No. 65) when issuing its Memorandum Opinion, and yet Plaintiffs' Third Amended Complaint (Doc. No. 93) leaves unanswered the

questions raised by the Court's Memorandum Opinion. Even with the new allegations in Plaintiffs' Third Amended Complaint, it is unclear whether Plaintiffs purchased their homes with the PEX already installed (or indeed whether the allegedly damaged items were originally part of Plaintiffs' properties as opposed to being added thereto after Plaintiffs' purchase) such that the Court would likely find the economic loss rule applied to (and thus barred) Plaintiffs' claims. And unless the economic loss rule does apply, then an answer from the Tennessee Supreme Court on the Bargaining Issue would be irrelevant to (and thus anything but dispositive of) the cause.[7] Moreover, Defendants have not yet raised another economic loss rule defense "via further motions" as anticipated by Plaintiffs. (Doc. No. 91 at 7).

Thus, the Bargaining Issue is at most only possibly determinative, as Plaintiffs' Brief itself makes clear. (Doc. No. 91 at 7) ("[T]his issue should be certified to the Tennessee Supreme Court because it is a novel issue not previously decided under Tennessee law, and because the issue *would* be dispositive of Defendants' economic loss rule defense in this case, which defense *could* be dispositive of the whole case via further motions anticipated to be filed by Defendants." (emphasis added)). A question such as this—i.e., one that is merely potentially determinative—has been rejected for certification by this Court before, and the Court is bound to conclude here that "certification of the proposed question[] is not warranted because resolution of [that] question[] may not be determinative of the case." *Thompson*, 2020 WL 12932418, at *2.

Thus, certification of the Bargaining Issue to the Tennessee Supreme Court is not appropriate at this juncture.

## Conclusion

---

[7] Although the Third Amended Complaint, in contrast to the Second Amended Complaint, does mention that Plaintiffs homes were "purchased," (Doc. No. 93 at ¶¶ 74, 141, 156), the Third Amended Complaint still does not specify whether Plaintiffs' homes were purchased with the PEX already installed.

For the reasons discussed above, Plaintiffs' Motion is **DENIED.**

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE