# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **BRIAN CARRICO, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Judge Richardson/Frensley** |
| | ) | **Case No. 3:23-cv-00497** |
| **UPONOR, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

## I. INTRODUCTION

In this products liability action, Plaintiffs Brian Carrico, Kacie Carrico, Don Gatlin, and Dora Gatlin (collectively, "Plaintiffs") brought this suit individually and on behalf of all others similarly situated against Defendants Uponor, Inc.; Uponor North America, Inc.; Uponor Corporation (collectively, "Defendants"); and Does 1-100, alleging that they sustained damages as a result of defective blue and red colored cross-linked polyethylene tubing ("PEX") manufactured and/or distributed by Defendants. Docket No. 123 (Fourth Amended Class Action Complaint). Defendants have denied the substantive allegations and asserted affirmative defenses. Docket No. 94.[1]

This matter is now before the Court on two related Motions. The first is "Plaintiffs' Motion to Compel Interrogatory and Document Request Responses by Defendants." Docket No. 108. Plaintiffs have filed supporting documents and a Supporting Memorandum. Docket Nos.

---

[1] As Plaintiffs' Fourth Amended Complaint was only recently filed, Defendants have yet to file their Answer, which is anticipated to be similar to their previous Answer (cited here) in the sense that it too will deny the substantive allegations and assert affirmative defenses.

108-1 through 108-5, 109.[2]  Defendants have filed a Response in Opposition.  Docket No. 110.

Plaintiffs have filed a Reply and additional supporting documents.  Docket Nos. 111, 111-1, 111-

2.  The second Motion is "Plaintiffs' Motion to Renew Motion to Compel Interrogatory and

Document Request Responses by Defendants and to Extend Deadlines in Case Management

Order and Memorandum in Support of Motion."  Docket No. 118.  Defendants have filed a

Response in Opposition to this Motion as well, and Plaintiffs have filed a Reply.  Docket Nos.

119, 121.  For the reasons set forth below, Plaintiffs' Motion (Docket No. 108) is GRANTED IN

PART.  Plaintiffs' Motion (Docket No. 118) is also GRANTED IN PART.

## II.  <u>LAW AND ANALYSIS</u>

### A.  <u>Discovery Requests and Motions to Compel</u>

Discovery in federal court is governed by the Federal Rules of Civil Procedure, which

provide that a party may request production of documents or other tangible items as long as the

information sought is within the scope of discovery.  Fed. R. Civ. P. 34(a); *see also* Fed. R. Civ.

P. 26(b)(1).  Interrogatories are covered by Rule 33, which provides that "[e]ach interrogatory

must, to the extent it is not objected to, be answered separately and fully in writing under oath."

Fed. R. Civ. P. 33(b)(3).

In general, the scope of discovery extends to nonprivileged information that is relevant to

any party's claim or defense, regardless of whether the information sought is admissible, that is

"proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The Rules were amended,

effective December 1, 2015, in part to address the alleged costs and abuses attendant to

discovery.  Under Rule 26, "[t]here is now a specific duty for the court and the parties to consider

---

[2] In the future, the Court would appreciate Plaintiffs giving their exhibits titles that describe the documents, rather than "exhibit."

discovery in the light of its 'proportional[ity] to the needs of the case . . . .'" *Turner v. Chrysler Grp. LLC*, No. 3:14-1747, 2016 U.S. Dist. LEXIS 11133, at \*2, (M.D. Tenn. Jan. 27, 2016), *quoting* Fed. R. Civ. P. 26(b)(1).  The following factors are relevant to a consideration of whether the scope of discovery is proportional:

> (1) the importance of the issues at stake in the action,
> (2) the amount in controversy,
> (3) the parties' relative access to relevant information,
> (4) the parties' resources,
> (5) the importance of the discovery in resolving the issues, and
> (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (numbering added).  "Nevertheless, the scope of discovery is, of course, within the broad discretion of the trial court." *United States v. Carell*, No. 3:09-0445, 2011 U.S. Dist. LEXIS 57435 at \*5 (M.D. Tenn. May 26, 2011), *quoting Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (internal quotation marks omitted).

After making a good faith effort to resolve a dispute, a party may move for an order compelling discovery.  Fed. R. Civ. P. 37(a)(1).  The moving party "must demonstrate that the requests are relevant to the claims or defenses in the pending action." *Carell*, 2011 U.S. Dist. LEXIS 57435 at \*5, *quoting Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008) (internal quotation marks omitted).  "Relevance for purposes of discovery is broadly construed and the information sought need not be admissible to be discoverable." *T.C. ex rel S.C. v. Metro Gov't of Nashville & Davidson Cty.*, No. 3:17-01098, 2018 WL 3348728, 2018 U.S. Dist. LEXIS 113517, at \*17 (M.D. Tenn. July 9, 2018).  "If relevancy is shown, the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules." *Carrell*, 2011 U.S. Dist. LEXIS 57435, at \*5 (internal quotation marks and citation omitted).

The Court has the authority under Rule 26(b)(2)(C) to limit the frequency or the extent of discovery otherwise allowed by the rules. The Sixth Circuit has observed that "the desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Surles v. Greyhound Lines, Inc.*, 474 F. 3d 288, 305 (6th Cir. 2007), *quoting Scales v. J. C. Bradford*, 925 F. 2d 901, 906 (6th Cir. 1996) (internal quotation marks omitted). As to the judge's role in discovery disputes, "[t]he revisions in Rule 26(b)(2) are intended to provide the court with broader discretion to impose additional restrictions on the scope and extent of discovery." *Surles,* 474 F. 3d at 305.

## B. **Plaintiffs' Motions**

Plaintiffs' Motions must be considered together, because the second Motion (Docket No. 118) provides updates on the status of the Parties' attempts to resolve the discovery dispute described in the first Motion (Docket No. 108). Since the initial Motion was filed, the Parties have participated in a discovery conference with the Court, conferred another time, and filed a Revised Joint Status Report. *See* Docket Nos. 114, 116. While the Parties appear to have made considerable progress in resolving their dispute, certain issues remain in contention.

### 1. **Interrogatories**

Plaintiffs request that the Court order a date certain for Defendants to serve supplemental responses to Interrogatories Nos. 5, 9, 14, 16, 20, 21, 24, 25, 26, and 27. Docket No. 118, p. 2-5. Defendants respond that "supplemental responses to each of these Interrogatories have been completed subject to client review and verification" and offer to "meet in good faith with counsel after service of the supplemental responses to discuss any remaining questions or disputes arising from those responses." Docket No. 119, p. 1 (citation modified). But, Defendants "reserve and will assert their previously stated objection to Interrogatory No. 21 (concerning claims outside of

4

Tennessee) and Interrogatory No. 26 (concerning litigation outside of Tennessee)." *Id.* at 1-2 (citation modified).

Plaintiffs reply that Defendants have not made clear when they will supplement their responses or provide additional requested information. Docket No. 121, p. 2-4. They ask the Court to order a date certain for such supplementation. *Id.* As to Defendants' objections to Interrogatories Nos. 21 and 26, Plaintiffs assert:

> The Opposition does make clear that Defendants <u>will not</u> provide the nationwide warranty claims concerning the defect at issue from 2009 to the present in response to Interrogatory 21 or a list of nationwide lawsuits about the defect at issue from 2009 to the present in response to Interrogatory 26. Therefore, the Court's assistance is needed to order Defendants to provide the information requested regarding Interrogatories 14, 21, 24, 25, 26, and 27, including nationwide warranty and lawsuit information for the time period of 2009 to the present.

*Id.* at 3-4 (emphasis in original; internal citation omitted).

Defendants do not indicate any objection to supplementing their responses to Interrogatories Nos. 14, 24, 25, and 27, they simply maintain that they have already done so. *See* Docket No. 119. To the extent that Defendants have any additional information responsive to one of those Interrogatories, they must provide it to Defendants no later than December 5, 2025. Otherwise, in the absence of any evidence that Defendants are withholding responsive information, there is nothing further to order with regard to these Interrogatories.

Interrogatory No. 21 requests that Defendants "identify all persons with any knowledge regarding warranty claims made regarding the Uponor PEX, as defined above, and describe such knowledge of each identified person and identify all documents and communications related to such knowledge of each identified person." Docket No. 108-1, p. 23 (citation modified). After making various objections, Defendants initially identified two individuals. *Id.* Defendants have

also agreed to produce "any available warranty claim files that exist for the named Plaintiffs," subject to an agreed-upon Protective Order. Docket No. 110, p. 15.

Under the broad definition of relevance for the purposes of discovery, the Court finds that the information requested by Interrogatory No. 21, including for claims outside Tennessee, is relevant to the claims and defenses in this matter, specifically Plaintiffs' claim that the product at issue was defective and Defendants' defense that it was not. *See*, *e.g.*, Docket No. 123, p. 11, Docket No. 94, p. 14.[3] Any claims from anywhere alleging the defect at issue in this lawsuit are relevant to whether that product is defective, regardless of where such claims arose. The burden therefore passes to Defendants to demonstrate why producing the information would be unduly burdensome or that the information is otherwise not discoverable under the Federal Rules. *Carrell*, 2011 U.S. Dist. LEXIS 57435, at *5. The Court finds that Defendants have not shown either; therefore, they must provide information responsive to Interrogatory No. 21 without regard to the state in which the warranty claims originated.

Interrogatory No. 26 requests that Defendants "identify all other lawsuits or cases that Defendants, collectively or individually, are now or have ever been involved in related to the Uponor PEX," as defined. Docket No. 108-1, p. 27 (citation modified). It further asks Defendants to "state the nature of each such lawsuit, the court or forum where each such lawsuit or case was filed, and the names, addresses, and telephone numbers of all parties and attorneys involved in each lawsuit or case identified." *Id.* Defendants initially objected to the Interrogatory. *Id.* Defendants argue that "lawsuits outside of Tennessee are irrelevant based on the current, proposed class definition which is limited to Tennessee." Docket No. 110, p. 16-17.

---

[3] As previously noted, Defendants have not yet filed an Answer to Plaintiffs' recent Fourth Amended Complaint.

Plaintiffs have the burden to demonstrate that the information requested is relevant. *Carell*, 2011 U.S. Dist. LEXIS 57435 at *5. They contend that:

> The requested information is relevant to many class certification issues including the defect in the Uponor PEX, Defendants' knowledge about the defect, Defendants' actions in concealing the defect, Defendants' misrepresentations about the Uponor PEX, the ascertainability of the class, the numerosity of the class, the typicality of the class, the commonality and predominance of issues of the class, the superiority of the class action, and Plaintiffs' damages model.

Docket No. 109, p. 16.

The Court finds that the information sought by Interrogatory No. 26 is relevant under the broad standard of relevance for the purposes of discovery. For the same reasons articulated above, information related to out-of-state lawsuits is relevant to this matter if it involves allegations of the same defect at issue in this case. This is true regardless of the fact that the class here is defined as "all persons and entities who own or owned homes, businesses, or other structures in Tennessee with Uponor PEX used as the lines and components of a potable water plumbing system where the Uponor PEX was produced using Uponor's patented flame/furnace treatment." Docket No. 123, p. 39.[4] Because Plaintiffs have shown that the information is relevant, the burden passes to Defendants to demonstrate that production of the information would be unduly burdensome or that the information is otherwise not discoverable under the Federal Rules. *Carell*, 2011 U.S. Dist. LEXIS 57435 at *5. Defendants do not make any such argument with specificity. *See* Docket Nos. 110, 119. Therefore, the information must be produced.

---

[4] Defendants cite to the previous version of the Complaint, which was the operative Complaint at the time the brief was filed. Both versions restrict the putative class to current or former owners of structures located in Tennessee. *Compare* Docket No. 93, p. 22; Docket No. 123, p. 39.

7

## 2.  <u>Requests for Production</u>

Plaintiffs maintain that "documents still must be produced in response to Document Requests 1, 2, 3, 4, and 5."  Docket No. 118, p. 5 (citation modified).  They also state that they are waiting to hear whether Defendants agree with their proposed search terms for the proposed ESI protocol.  *Id.* at 6.  Plaintiffs ask the Court to "order Defendants to revise their ESI protocol use Plaintiffs' proposed search terms [*sic*] and to include all of the steps, persons, searches, platforms, and information requested by Plaintiffs including Defendants' document management systems as well as email inboxes and outboxes."  *Id.* at 7.

Defendants assert that "the search of e-mails, using search terms previously agreed with counsel, remains ongoing," and that "internal documents concerning the manufacturing process at issue in this litigation, along with other documents outlined in the previous Joint Statement following the Court-ordered conference, are under review for responsiveness, privilege, and ultimate production."  Docket No. 119, p. 2 (citation modified).

Plaintiffs complain that "Defendants have not acted with urgency in producing documents" and that they "have not indicated agreement to Plaintiffs' other specific requests related to document production."  Docket No. 121, p. 2, referencing Docket No. 118, p. 6, "top paragraph").  Plaintiffs argue that Defendants' promise to produce "documents concerning the manufacturing process at issue and other documents outlined in the previous Joint Statement" is vague, "does not describe all of the remaining documents required to be produced," and "no deadline for production is given."

The "top paragraph" cited by Plaintiffs states as follows:

> Regarding the status of document production, Defendants have made only two document productions.  The first production was 8449 pages made on August 13 and was only Uponor PEX catalogs and other advertisements and design documents related to

8

> Uponor PEX dated between 2009 and 2020. The second
> production was made on September 12, 2025, but was only 55
> pages and only included (1) a spreadsheet listing distributors in
> Tennessee with limited-information, (2) a spreadsheet listing
> warranty claims from persons in Tennessee with limited-
> information, and (3) a 2015-2016 Uponor Corporation insurance
> policy and excess coverages. That means that Defendants still
> have to produce almost all of the documents requested by the
> Interrogatories and Document Requests. At the September 8
> counsel conference, Defendants indicated they will do a "rolling
> production." Plaintiffs requested that Defendants indicate the
> remaining dates for the rolling productions as well as the date by
> which all document production will be completed. Defendants
> said that they would try to determine such dates and provide those,
> but have not done so. The Court should order a completion date
> for all documents to be produced. Such completion date should be
> taken into account regarding the extension of the remaining
> deadlines in this action, as requested below.

Docket No. 118, p. 6.

As can be seen, Plaintiffs' "other specific requests" appear to be that Defendants produce

the requested documents and by a date certain. *Id.* In their Reply, Plaintiffs add that

"Defendants need to search Defendants' document management systems and platforms as well."

Docket No. 121, p. 3.

It is not clear whether Defendants oppose this request. *See* Dockt No. 119, p. 2 (noting

that "internal documents concerning the manufacturing process at issue in this litigation, along

with other documents outlined in the previous Joint Statement . . . are under review for

responsiveness, privilege, and ultimate production"). Defendants do not specifically discuss the

issue of searching "document management systems and platforms" in their briefs. *See* Docket

Nos. 110, 119. The Partis' most recent Joint Dispute Statement, filed on September 12, 2025,

states that "Defendants indicated that Defendants' ESI vendor will have to be consulted and then

a response will be given to Plaintiffs." Docket No. 116, p. 8. Defendants argue in a general way

that Plaintiffs have requested irrelevant information, but do not explain how the information

requested by any particular RFP is irrelevant. *See* Docket No. 110. Similarly, although they object to producing "all" documents and identifying "all" persons and make a general statement that "most of Plaintiffs' requests are fundamentally flawed and impose a burden and expense on Defendants such that the type and scope of information sought is outweighed by any potential benefit," Defendants do not specifically discuss how any particular RFP is unduly burdensome. Docket No. 110, p. 10; *see* Docket Nos. 110, 119.

The Court finds this insufficient to establish undue burden. *See Anderson*, 251 F.R.D. at 311 ("a general statement that the discovery is overly broad and unduly burdensome . . . by itself is insufficient to deny discovery"). Further, Defendants need to tell Plaintiffs whether they are searching their "document management systems and platforms," as they apparently pledged to do in early September.

Beyond these points, the Parties seem to have worked through many of their these issues, for which they are to be commended, and the only additional remaining concern at this point is when Defendants' document production will complete. Unfortunately, Defendants do not provide the Court with any information about how that process is going or when they expect it to conclude. *See* Docket Nos. 110, 119. But, Defendants do state that they "pose no objection to Plaintiffs' proposed extensions to the deadlines recently set forth in the current Scheduling Order," which assists the Court in determining an appropriate deadline for the completion of document production in light of the requested extensions.[5] Docket No. 119, p. 2 (citation modified).

---

[5] The Court further commends the Parties for reaching agreement on this issue. At each point of potential disagreement, a lawyerly approach that ends in collaboration on the logistics of the lawsuit promotes the interests of the Parties and is most likely to result in an expedient resolution by the Court.

### 3. <u>Extension of Deadlines</u>

Plaintiffs explain that "because of the discovery dispute issues that have arisen, the parties have agreed that the deadlines in the Initial Case Management Order [ECF#99; "ICMO"] should be extended by at least four months." Docket No. 118, p. 7 (citation modified). Specifically, "the deadlines requested to be extended are the deadlines set forth in Sections E and G of the ICMO." *Id.* As previously noted, Defendants have stated their agreement with these extensions. Docket No. 119, p. 2.

The deadlines at issue are those for discovery related to class certification issues and Plaintiffs' motion for class certification, as well as deadlines for the disclosure and deposition of experts. Docket No. 99, p. 3. The Court agrees with the Parties that these deadlines should be extended by four months, as requested. The deadline for discovery related to class certification issues will therefore be extended to April 30, 2026. Defendants must complete their document production no later than December 5, 2025, so that Plaintiffs will have all relevant and responsive documents available to them when completing any necessary class certification discovery. The Court is extending this additional time to Defendants in part because Plaintiffs have recently filed a Fourth Amended Complaint. Defendants can make rolling productions or deliver all documents at once, but they must complete their process by December 5 (with an understanding of the ongoing duty to supplement imposed by Rule 26).

### III. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion (Docket No. 108) is GRANTED IN PART. Plaintiffs' Motion (Docket No. 118) is GRANTED IN PART. Defendants must answer Plaintiffs' question as to whether they are searching their "document management systems and platforms" for responsive ESI no later than November 7, 2025. No later than December 5, 2025,

Defendants must supplement their Interrogatory responses and complete their document production as described above.

**IT IS SO ORDERED.**

_____
**Jeffery S. Frensley**
**United States Magistrate Judge**

Case 3:23-cv-00497    Document 124    Filed 11/03/25    Page 12 of 12 PageID #: 3720