# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| BRIAN CARRICO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | NO. 3:23-cv-00497 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| UPONOR, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court in this putative class action is the "Motion to Transfer and Memorandum of Law in Support" (Doc. No. 142, "Motion") filed collectively by all four Plaintiffs, namely Brian Carrico, Kacie Carrico, Don Gatlin, and Dora Gatlin. The Motion is supported by the declaration (Doc. No. 142-1, "Birka-White Declaration") of one of Plaintiffs' attorneys, David M. Birka-White. Attached to the Birka-White Declaration are two exhibits (Doc. Nos. 142-2, 142-3), each of which is composed of copies of certain discovery responses of one of the Defendants, namely Uponor, Inc.

Via the Motion, Plaintiffs request that this action[1] be transferred to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1404(a). Uponor, Inc., Uponor North America, Inc., and Uponor Corporation (collectively, "Defendants" or "Uponor")[2] have

---

[1] Courts tend to refer interchangeably to transferring *venue* and transferring *the action* (or case). The Court will do likewise, while noting that actually the latter reference is probably more accurate because it more precisely suggests the entirety of what is being transferred (the case as a whole).

[2] Plaintiffs also brought claims against unidentified "Does 1 through 100." (Doc. No. 123 at 1). References herein to "Defendants" are references solely to the (three) named defendants in this action, namely Uponor, Inc., Uponor North America, Inc., and Uponor Corporation, and not to "Does 1 through 100."

filed a response (Doc. No. 146, "Response") in opposition to the Motion. Plaintiffs have filed a reply (Doc. No. 148, "Reply") in further support of the Motion. The Reply is supported by the declaration (Doc. No. 148-1, "Pulliam Declaration") of another of Plaintiffs' counsel: Andrew J. Pulliam.

For the reasons stated herein, the Motion (Doc. No. 142) will be **GRANTED**.

BACKGROUND[3]

The reader's familiarity with this case is presumed, and the Court will provide only a brief overview of the factual background of this case. This case is a putative class action arising out of alleged defects in polyethylene tubing ("PEX"). (*See generally* Doc. No. 123). Each of the Plaintiffs is a Tennessee resident. (Doc. No. 123 at ¶¶ 2-3). Defendant Uponor, Inc. is an Illinois corporation with its principal place of business located in Minnesota. (*Id.* at ¶ 5). Defendant Uponor North America, Inc. is a Delaware corporation with its principal place of business located in Minnesota. (*Id.* at ¶ 6). Defendant Uponor Corporation is a Finnish corporation with its principal place of business located in Finland. (*Id.* at ¶ 7).

---

[3] Although the law on this point is not necessarily as developed as it could be, this Court has indicated that in considering a motion to transfer venue, the factual allegations of the complaint should be taken as true. *See Sardeye v. Wal-Mart Stores E., LP*, No. 3:18–CV–01261, 2019 WL 4276990, at *1 n.2 (M.D. Tenn. Sept. 10, 2019). Another court has stated, more precisely, that in considering a motion to transfer venue, the court accepts all well-pleaded factual allegations in the complaint as true unless controverted by the defendants' affidavits. *See Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 900 (N.D. Ill. 2001). The Court finds this case law persuasive and so will accept as true all well-pleaded factual allegations in this action's operative complaint (Doc. No. 123, "Complaint") in evaluating the Motion, unless these factual allegations are otherwise controverted by affidavits of Defendants.

Consistent with the above discussion, the Court uses "alleged" or "allegedly" to qualify allegations that the Court is *not* accepting as true, such as legal conclusions or conclusory allegations.

Finally, the Court notes that when citing to a page in a document filed by one of the parties, the Court endeavors to cite to the page number ("Page __ of __") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document. In addition, where the Complaint is cited herein without including a paragraph symbol, the citation is not to a paragraph number but rather to a page that contains the cited content outside the boundaries of any paragraph.

Plaintiffs suffered damage to their respective homes and other property (allegedly) as a result of the (allegedly) defective PEX piping that was designed and manufactured by Defendants. (*Id.* at ¶¶ 27, 37, 42-72, 208). Plaintiffs bring, on behalf of themselves and on behalf of a putative class, claims in each of six counts.[4] Count I is a strict product liability claim arising out of (alleged) defects in PEX. (*Id.* at ¶¶ 252-58).[5] Count II is a strict product liability claim arising out of (alleged) *design* defects in PEX. (*Id.* at ¶¶ 259-68). Count III is a negligence claim arising out of Defendants' alleged failure to "to use reasonable care in the testing, design, manufacture, distribution, advertising/marketing, and/or sale" (*id.* at ¶ 271) of the PEX used in the homes of Plaintiffs and members of the putative class. (*Id.* at ¶¶ 269-79). Count IV is a fraudulent concealment claim arising out of the alleged "knowing[], affirmativ[e], and active[]" (*id.* at ¶ 290) failure of Defendants to disclose the alleged defects in PEX. (*Id.* at ¶¶ 280-94). Count V is a negligent misrepresentation claim arising out of Defendants' alleged "negligent[] misrepresent[ation]" in

---

[4] The putative class in this case consists of:

> All persons and entities who own or owned homes, businesses, or other structures in Tennessee with Uponor PEX used as the lines and components of a potable water plumbing system where the Uponor PEX was produced using Uponor's patented flame/furnace treatment.

(Doc. No. 123 at ¶ 213). Excluded from the putative class are:

> a. All owners or former owners of properties in Tennessee with Uponor PEX installed who have asserted a claim pursuant to the requirements and terms of Uponor's Express Warranty;
> b. Defendants' officers, directors and employees; Defendants' affiliates and affiliates' officers, directors, and employees; Defendants' distributors and distributors' officers, directors, and employees; and
> c. Judicial officers and their immediate family members and associated court staff assigned to this case.

(*Id.* at ¶ 214).

[5] Count I appears to arise out of *both* alleged *manufacturing* defects and alleged *design* defects in PEX. (Doc. No. 123 at ¶ 258 ("Defendants are strictly liable to Plaintiffs and the Class for the damages alleged herein caused by the defects and inadequacies in the design and manufacturer of Uponor PEX.")).

failing to "disclose relevant information" (*id.* at ¶ 306) regarding PEX. (*Id.* at ¶¶ 295-310). Finally, Count VI is a claim under the Tennessee Consumer Protection Act ("TCPA"). (*Id.* at ¶¶ 311-25).

Via the instant Motion, Plaintiffs request that this action be transferred to the United States District Court for the District of Minnesota ("District of Minnesota") pursuant to 28 U.S.C. § 1404(a). Plaintiffs specifically contend that (1) this action could have originally been brought in the District of Minnesota (Doc. No. 142 at 4-5); (2) it is in the interest of the efficient administration of the court system to transfer this action to the District of Minnesota (*id.* at 5-8); and (3) the private and public interest factors that courts typically evaluate in considering motions to transfer venue support transferring this action to the District of Minnesota. (*Id.* at 8-12). Defendants naturally disagree, contending (in the headers of their Response) that transfer is not warranted because (1) "The existence of 'individualized inquiries' at class certification demonstrates that the most important proof is in Tennessee – not Minnesota" (Doc. No. 146 at 4-5); (2) "Tennessee has a strong local interest in adjudicating Tennessee claims under Tennessee law" (*id.* at 5-6); (3) "This Court's investment in case management weighs against transfer" (*id.* at 6-7); (4) "Plaintiffs have already chosen a forum: The Middle District of Tennessee" (*id.* at 7); (5) "This litigation's 'center of gravity' is in Tennessee" (*id.* at 7-8); (6) "The convenience of non-party witnesses favors Tennessee" (*id.* at 8-9); and (7) "Access to relevant, physical proof favors Tennessee." (*Id.* at 9-10).

<u>LEGAL STANDARD</u>

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *see also TailGate Beer, LLC v. Boulevard Brewing Co.*, No. 3:18–CV–00563, 2019 WL 2366948, at *7 (M.D. Tenn. June 5, 2019). "The

burden rests with the moving party [] to establish that venue should be transferred." *Winnett v. Caterpillar, Inc.,* 3:06–cv–00235, 2006 WL 1722434, \*2 (M.D. Tenn. June 20, 2006) (citing *Blane v. American Investors Corp.*, 934 F. Supp. 903, 907 (M.D. Tenn. 1996)).

In reviewing a motion to transfer venue pursuant to Section 1404(a), a court must first consider a threshold question, namely "whether the action might have been brought in the transferee court." *In re Aredia & Zometa Prods. Liab. Litig.*, No. 3:06-MD-1760, 2008 WL 686213, at \*1 (M.D. Tenn. Mar. 6, 2008). If an action could have been brought in the (proposed) transferee court, a court then balances case-specific factors related to the private interests of the parties and public-interest concerns. *TailGate Beer, LLC*, 2019 WL 2366948, at \*7; *see also Ingram Barge Co., LLC v. Bunge N. Am., Inc.*, 455 F. Supp. 3d 558, 569 (M.D. Tenn. 2020).

In evaluating the private interests of the parties, courts consider the following factors:

> (1) the convenience to the parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; [and] (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively.

*Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 962 (M.D. Tenn. 2008) (quoting *Campbell v. Hilton Hotels Corp.*, 611 F. Supp. 155, 157 (E.D. Mich. 1985). Also relevant in evaluating the private interests of the parties is the location of a case's "locus of operative facts," *Smith*, 578 F. Supp. 2d at 962 (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006)), or, in other words, where the "center of gravity" of a particular litigation lies. *Patel v. AR Grp. Tennessee, LLC*, 2021 WL 4133954, at \*9 (M.D. Tenn. Sept. 10, 2021) (quoting *N. Am. Demolition Co. v. FMC Corp.*, 2005 WL 1126747, at \*2 (N.D. Ohio Apr. 28, 2005)).[6] The Court also considers

---

[6] The Court discerns that there is in fact no (or virtually no) daylight between where a case's "locus of operative fact" lies and where the litigation's "center of gravity is located." *Cf. Panaro v. United Airlines, Inc.*, No. 4:23-CV-45, 2024 WL 4291495, at \*3 (E.D. Tenn. Sept. 25, 2024) (discussing the "locus of operative facts" and "center of gravity" and using these terms interchangeably); *Sacklow v. Saks Inc.*, 377

the "plaintiff's choice of forum" in evaluating the private interests of the parties. *Sacklow v. Saks Inc.*, 377 F. Supp. 3d 970, 877 (M.D. Tenn. 2019).

> The factors courts consider in evaluating the public interest include:
>
> (1) the enforceability of the judgment; (2) practical considerations affecting trial management; (3) docket congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law.

*Smith*, 578 F. Supp. 2d at 962 (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995). In evaluating where the public interest lies, courts have also assessed whether transfer would serve "the efficient administration of the court system," *Sacklow*, 377 F. Supp. 3d at 881 (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220-21 (7th Cir. 1986)), and whether transfer would help prevent inconsistent or duplicative judicial rulings. *See Panaro v. United Airlines, Inc.*, 2024 WL 4291495, at *4 (E.D. Tenn. Sept. 25, 2024) (noting that transfer of venue was warranted where "denying the transfer of venue would lead to 'the wastefulness of time, energy and money that § 1404(a) was designed to prevent'" and where "[t]ransfer will enable 'the efficient administration of the court system' by avoiding duplicative and inconsistent rulings.").[7]

---

F. Supp. 3d 870, 880 (M.D. Tenn. 2019) (same). So, in its analysis of the Motion, the Court treats these terms as synonyms and uses these terms interchangeably.

[7] Some courts also treat "systemic integrity and fairness" as a factor in evaluating transfer. This factor—to the extent it is a factor—has been subjected to differing treatment, even within this district. Some judicial decisions have treated this factor not as a factor as such at all, but rather as a synonym for the public interest as a whole. *Patel*, 2021 WL 4133954, at *10. Other decisions have referred—even if only in passing—to this factor as being one of the private interest factors. *See Robert J. Young Co., LLC v. Zack Hemp, LLC*, No. 3:25-CV-00674, 2026 WL 1649988, at *7 (M.D. Tenn. June 5, 2026). Still other decisions—even if referring to this factor at times as being one of the private interest factors—have treated this factor in practice both as one of the public interest factors and as something of a catchall for considerations of judicial efficiency. *Sacklow*, 377 F. Supp. 3d at 877, 881.

The undersigned previously has embraced the view that "systemic integrity and fairness" is not a separate factor, but instead a synonym for the public interest as a whole. *Patel*, 2021 WL 4133954, at *10. Still believing this approach to be correct, the undersigned follows it herein.

Importantly, "[n]o one factor is dispositive; transfer is appropriate if the balance of these factors 'strongly' favors trying the case in the transferee district," *Avery Dennison Corp. v. Alien Tech. Corp.*, 632 F. Supp. 2d 700, 718 (N.D. Ohio 2008), and a district court "has broad discretion to grant or deny a motion to transfer [a] case." *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994).[8]

<u>ANALYSIS</u>

1.  <u>Whether this Action Could Have Been Brought in the District of Minnesota</u>

As an initial matter the Court considers whether this action could have been originally brought in the District of Minnesota. As this Court has previously recognized, "[a]n action 'might have been brought' in a transferee court if that court has subject matter jurisdiction, venue would be proper, and the defendant is amenable to process from that court." *Aegis Scis. Corp. v. Millennium Lab'ys, Inc.*, No. 3:11-CV-00294, 2011 WL 3420642, at *2 (M.D. Tenn. Aug. 4, 2011). Plaintiffs argue:

> Each of these requirements are plainly met in the District of Minnesota. Like this Court, the District of Minnesota would have subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A). Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1391 because both Uponor Inc. and Uponor North America, Inc. ("Uponor NA") have their principal place of business (and therefore reside) in that District (*see* Dkt. No. 126, ¶¶ 5-6) and because a substantial part of the acts giving rise to Plaintiffs' claims — including the design and manufacturing of the allegedly defective Uponor PEX — occurred in that District. Finally, it cannot be reasonably disputed that Defendants are amenable to process from the District of Minnesota, as they are domiciled and have sufficient minimum contacts in the District and because other courts in the District have exercised personal jurisdiction over Defendants. *See George v. Uponor Corp.*, 988 F. Supp.2d 1056 (D. Minn. 2013); *McGregor v. Uponor, Inc.*, No. 09-cv-01136, 2010 WL 55985 (D. Minn. Jan. 4, 2010).

---

[8] The Court notes that courts have elucidated the factors to consider in evaluating whether transfer of venue pursuant to Section 1404(a) is warranted in various and ever-changing constellations and combinations. Given this reality and given what the Court discerns is the overlapping nature of many of these factors, the Court herein will evaluate in-depth solely those factors that the parties have raised for the Court's consideration and will eschew "dinging" any particular party for not mentioning a particular factor that the Court has identified herein.

(Doc. No. 142 at 4-5). This argument is well-taken, and, absent any dispute from Defendants as to Plaintiffs' argument here, the Court finds that this action could have been brought originally in the District of Minnesota. With that threshold question answered, the Court will now turn to analyzing the private interest factors.

### 2. Private Interest Factors

With respect to the private interest factors, in the briefing on the Motion the parties have addressed: (1) the convenience of the witnesses; (2) the convenience to the parties; (3) the relative ease of access to obtaining proof; (4) the locus of operative facts and the center of gravity of this action; and (5) the Plaintiffs' choice of forum. The Court will address each of these factors below.

#### a. Convenience of Witnesses

As this Court has previously held, "[t]he convenience of witnesses, especially non-party witnesses, is perhaps the most important factor in the transfer analysis." *Sacklow*, 377 F. Supp. 3d at 878 (collecting cases). Importantly, "[t]he determination of the convenience of witnesses is not merely a head count, but includes a consideration of the importance of each witness and includes both non-party witnesses outside the scope of the Court's subpoena power and the geographic location of any witnesses likely to testify in the case." *Patel*, 2021 WL 4133954, at *8 (quoting *Oakley v. Remy Int'l, Inc.*, No. 2:09-0107, 2010 WL 503125, at *4 (M.D. Tenn. Feb. 5, 2010)).

Here, the parties dispute whether the convenience of the witnesses favors transfer. Plaintiffs contend this factor "weighs in favor of transfer to the District of Minnesota or is at least neutral" (Doc. No. 142 at 10), and Defendants argue that the convenience of the witnesses—especially the non-party witnesses—weighs against transfer. (Doc. No. 146 at 8-9).

In support of their argument, Plaintiffs identify by name—via the Birka-White Declaration—eight potential (party) witnesses in this action, namely certain of Defendants'

employees,[9] that are (or are likely) located in Minnesota. (Doc. No. 142-1 at 3-4). Again via the Birka-White Declaration, Plaintiffs likewise indicate that these witnesses are likely to be important to this action because "Defendants identified each of [them] as having knowledge related to Plaintiffs' claims, including information regarding the design, manufacture, and testing of [the at-issue] PEX." (*Id.* at 4). In their Response, Defendants identify by name only *one* (potential) witness (a witness who is a non-party)—Hannah Custom Homes, LLC (Doc. No. 146 at 8)—who they purport is located in Tennessee. However, Defendants have provided no evidence of this witness actually being located in Tennessee.[10]

Considering the parties' arguments on this factor, three observations are crucial: (1) Plaintiffs identified eight potential witnesses by name that are (or likely are) located in Minnesota; (2) the witnesses that Plaintiffs identified seem important to this action, for the reasons stated in the Birka-White Declaration and repeated by the Court herein; and (3) Defendants have identified only one witness by name and provided no evidence that this witness is located in Tennessee.

---

[9] Generally, employees of a party employer are considered party witnesses. *See Vargas v. Seamar Divers Intern., LLC*, No. 2:10–CV–178, 2011 WL 1980001, at *5 (E.D. Tex. May 20, 2011) ("[C]urrent employees . . . should be considered party witnesses because they can be presumed to appear willingly on behalf of their party employer.").

[10] Defendants contend that "plumbers and contractors who installed, inspected, or repaired plumbing in Plaintiffs' homes and may have worked in putative class members' homes; remediation contractors who addressed water damage, mold, and structural issues in Plaintiffs' homes," and "any local inspectors or appraisers who evaluated damage or diminution in property value," (Doc. No. 146 at 8), are witnesses located in Tennessee. But Defendants do not identify these witnesses by name or provide any proof that they are (currently) located in Tennessee.

Additionally, Defendants refer generally to "contractors and subcontractors" who installed the at-issue PEX as having (among other individuals, like members of the putative class) evidence relevant to class certification. But Defendants do not explicitly identify these individuals as potential *witnesses* in this action, describe the form the proof these individuals will provide (e.g., witness testimony or other types of proof), or otherwise provide any proof that these individuals are (currently) located in Tennessee. (Doc. No. 146 at 4-5).

In other words, these particular contentions by Defendants do not disturb the Court's conclusion that the convenience of the witnesses weighs in favor of transfer to the District of Minnesota.

Considering these points, and mindful that evaluating the convenience of witnesses is not merely a head count, the Court finds that the convenience of the witnesses (i.e., this factor) weighs in favor of transfer to the District of Minnesota.

### b. Convenience of the Parties

As stated above and as relevant to the convenience of the parties, although all Plaintiffs are Tennessee residents (Doc. No. 123 at ¶¶ 2-3), two of the three Defendants in this action—namely Uponor, Inc. and Uponor North America, Inc.—have their principal places of business in Minnesota. (*Id.* at ¶¶ 5-6).[11] Plaintiffs assert that this factor is neutral (Doc. No. 142 at 10), and Defendants do not dispute this characterization. So, the Court finds that this factor is neutral.[12]

### c. Locus of Operative Facts and the Center of Gravity

As this Court has recognized in the past, "[a] fundamental principle guiding the Court's analysis of a motion to transfer is that litigation should proceed in that place where the case finds its center of gravity [or where the case's locus of operative fact lies]."[13] *Patel*, 2021 WL 4133954,

---

[11] Consistent with a footnote above, the Court is accepting as true all well-pleaded factual allegations in the Complaint (Doc. No. 123). However, the Court notes that its discussion of the location of Uponor North America, Inc. and Uponor, Inc.'s principal places of business being in Minnesota is further buttressed by these corporations' business-entity disclosure forms (Doc. Nos. 12, 15), wherein Uponor North America, Inc. and Uponor, Inc. disclose that their respective principal places of business are located in Minnesota.

[12] Nevertheless, the Court notes that this is an odd case, where the Tennessee-based Plaintiffs seek to transfer this action *from* Tennessee (which would in theory be more convenient for Plaintiffs) *to* Minnesota (which would seemingly be more convenient for at least two of the three Defendants in this action and less convenient for Plaintiffs). So, there is a colorable (and even persuasive) argument that this factor should in fact weigh in favor of transfer given that the parties seeking transfer (Plaintiffs) have seemingly consented to whatever inconvenience that they would suffer as a result of that transfer. Still, given that Plaintiffs have not made this argument, the Court will not make this argument *sua sponte* for Plaintiffs.

[13] As noted above, the Court discerns that there is in fact no difference between where a case's locus of operative fact lies and where the litigation's center of gravity is located. So, in its analysis of the Motion, the Court treats these terms as synonyms and uses these terms interchangeably.
   The Court is aware that the utility of the phrase "center of gravity" as a standard is impaired by the fact that the phrase actually is a mere metaphor in this context.

at *9 (quoting *N. Am. Demolition Co.*, 2005 WL 1126747, at *3). The undersigned has previously

examined this factor and explained:

> As stated, this principle sounds almost dispositive, as if the general rule is that a motion to transfer to a particular district should be granted, irrespective of other factors, if that district is found to be the center of gravity. But this "fundamental" principle" only goes so far, as it must be viewed in harmony with the above-stated recognized principle that generally a plaintiff's choice of forum (if legally proper) rarely should be disturbed. In other words, it would go too far to say that transfer *always* "should" be made to wherever the "center of gravity" is. But the Court does indeed need to determine where the "center of gravity" is properly pegged and take the location of the center of gravity into account.
>
> "Center of gravity" in this context is not a legal term of art but rather a metaphor, and an inexact one at that. Nevertheless, the concept is not particularly difficult to grasp; it is a reference to the place of occurrence of the majority (or perhaps plurality) of relevant events or, perhaps, events of greatest significance.

*Patel*, 2021 WL 4133954, at *9. Here, as expected, the parties disagree as to where the center of

gravity of this case lies. Plaintiffs contend:

> Here, although Plaintiffs suffered injury in Tennessee, the events that caused Plaintiffs' injury (and thus give rise to this action) are the design, manufacturing, marketing, sale, and distribution of defective Uponor PEX pipe — all of which occurred in or originated from Uponor's headquarters and/or production facilities in Minnesota. *See Adams v. Key Tronic Corp.*, 1997 WL 1864, at *4 (S.D.N.Y. Jan. 2, 1997) ("the place where the research, design and testing took place, and where the manufacturer made production decisions" is a locus of operative facts in a product liability case); Ex. 1 (Uponor's Supp. Resps. to Pls.' Interrogs., No. 13) (Uponor manufactures Uponor PEX in Minnesota); Dkt. No. 126, ¶¶ 5-6 (admitting that the principal place of business for Uponor Inc. and Uponor NA is in Apple Valley, Minnesota).

(Doc. No. 142 at 10). Defendants disagree and argue:

> [T]he "center of gravity" in the present case is in Tennessee because of the inevitable individualized inquiries at class certification. The construction and alleged damage all occurred in Tennessee. Plaintiffs conceded in each of their complaints that "a substantial part of the acts giving rise to Plaintiffs' claims occurred within Sumner County, Tennessee." [Doc. 123, FAC ¶ 26.] This is an admission that Sumner County is the locus of operative facts under 28 U.S.C. § 1391, which requires venue where "a substantial part of the events or omissions giving rise to the claim occurred."

(Doc. No. 146 at 8).

Here, Plaintiffs' argument is well-taken. Plaintiffs correctly argue that in products liability cases such as this one, federal courts regularly find that the center of gravity (or locus of operative facts) of an action is located in "the place where the research, design and testing [of a product] took place, and where the manufacturer made production decisions." *Adams v. Key Tronic Corp.*, 1997 WL 1864, at *4 (S.D.N.Y. Jan. 2, 1997). *See also Orthoflex, Inc. v. Thermotek, Inc.*, No. 10 C 1875, 2010 WL 5069700, at *3 (N.D. Ill. Dec. 3, 2010) ("Courts have routinely held that in cases where the design and manufacture of a product is at issue, the situs of material events is where the product was produced."). And here, Defendant Uponor Inc. has stated—in a discovery response to Plaintiffs—that the at-issue PEX in this action was manufactured in Minnesota, (Doc. No. 142-2 at 12), and Defendants do not contest in their Response Plaintiffs' assertion, (Doc. No. 142 at 10), that the at-issue PEX was designed, manufactured, marketed, sold, and distributed in Minnesota.

Defendants' arguments that this case's center of gravity is located in Tennessee are unavailing. For instance, Defendants' argument that this case's center of gravity is in this district because venue is proper in this district pursuant to 28 U.S.C. § 1391 (Doc. No. 146 at 8)—as the district where "a substantial part of the events or omissions giving rise to the claim occurred, " 28 U.S.C. § 1391(b)(2)—ignores the reality that venue can be proper in more than one district and misapprehends the applicable inquiry when considering where a case's center of gravity is located. Indeed, in considering where a case's center of gravity is, the Court does not merely look to where a *substantial* part of the events giving rise to a claim occurred—so as for venue to be proper—but instead focuses on "the place of occurrence of the *majority* (or perhaps plurality) of relevant events or, perhaps, *events of greatest significance*" in the case. *Patel*, 2021 WL 4133954, at *9 (emphasis

added).[14] And although the Court is sympathetic to Defendants' assertion that the center of gravity

of this action is in Tennessee because "[t]he construction [using the at-issue PEX] and alleged

damage [from the at-issue PEX] all occurred in Tennessee" (Doc. No. 146 at 8), this argument

does not persuade the Court to depart from the bevy of cases—discussed above—holding that in

products liability cases, the center of gravity (or locus of operative facts) is located in "the place

where the research, design and testing [of the product] took place, and where the manufacturer

made production decisions." *Adams*, 1997 WL 1864, at *4. *See also Reese v. Trail King Indus.,

Inc.*, No. 316CV00723RLMMGG, 2017 WL 2212542, at *2 (N.D. Ind. May 16, 2017) ("the

location of an accident that revealed an allegedly defective product is a red herring for transfer

analysis in cases where products liability claims based on defective design and manufacture are

raised.").

Accordingly, the Court finds that this factor weighs in favor of transfer.

### d. Location of Sources of Proof

Regarding the location of the sources of proof, Plaintiffs argue that this factor weighs in

favor of transfer because:

> [M]ost if not all of the relevant physical evidence related to Plaintiffs' product
> liability claims is located in Minnesota, specifically at Defendant's production
> facilities and corporate headquarters. *See Progressive N. Ins. Co. v. Therm Tech.
> Corp.*, 2006 WL 1814346, at *2 (W.D. Ky. June 29, 2006) (explaining that in
> products liability cases, "a significant amount of evidence is developed regarding
> the design and/or manufacturing process used to produce the product in question .
> . . [and] it is likely that a significant portion of the evidence in this regard would be
> developed . . . where the persons involved in these processes are located").
> Although the location of documents and electronic records is generally a neutral
> factor, courts routinely find that this factor supports transfer when relevant physical
> evidence (such as product samples) is located in the transferee district. *See e.g.,
> Watermark Solid Surface, Inc.*, 2008 WL 2485612, at *6 (product molds at issue

---

[14] And, to the extent that Defendants argue that this case's center of gravity is in Tennessee because certain individualized inquiries at class certification will involve evidence located in Tennessee (Doc. No. 146 at 8), such argument is better suited to the Court's analysis of either the convenience of witnesses or otherwise the location of sources of proof.

were located in Madison, Wisconsin, which supported transfer to Western District of Wisconsin). Here, in addition to Defendants' voluminous documents and electronic records regarding its design, manufacturing, marketing, and sale of Uponor PEX (which are likely housed at Uponor's Minnesota headquarters), relevant evidence will include physical samples of Uponor PEX, which are likely located at Uponor's manufacturing facilities in Minnesota. *See* Birka-White Decl. ¶¶ 7-8; Ex. 1 (Uponor's Supp. Resps. to Pls.' Interrogs., No. 13) (Uponor manufactures Uponor PEX in Minnesota). By contrast, the relevant evidence located in Tennessee is, primarily, Plaintiffs' documents related to their damages. Accordingly, the court should find that this factor weighs in favor of transfer to Minnesota or at least is neutral.

(Doc. No. 142 at 10-11). As for Defendants, they contend:

There is no doubt that relevant proof is located in both Minnesota and Tennessee, but the most critical proof for class certification will be found in Tennessee. The Court should not transfer the case to a forum distant from these individualized inquiries.

(Doc. No. 146 at 5). Defendants further argue that "immovable, physical evidence is located in Tennessee: the buildings with the allegedly damaged materials (flooring, subflooring, framing, drywall, and insulation), and the installed PEX (including any remaining in-place sections)." (Doc. No. 146 at 9). Defendants do concede, however, that "certain PEX samples are located in Minnesota." (Doc. No. 146 at 9).[15]

---

[15] As discussed in a different context in a footnote above, Defendants argue that the Court will need to rely on evidence located in Tennessee at the class certification phase to determine, among other things (1) whether alleged damage suffered by members of the putative class "was caused by the [PEX] or by improper installation, maintenance, or use" (Doc. No. 146 at 4); and (2) whether any members of the putative class are bound by particular warranties that may impact their membership in the class. (*Id.* at 5). According to Defendants, this evidence will be found in proof sourced from "contractors and subcontractors" (among others) located in Tennessee. (*Id.* at 4-5).

Given the lack of detail in these particular arguments, the Court has trouble evaluating Defendants' assertions within the framework of this particular factor. Namely, the Court is unsure whether the evidence to which Defendants refer is physical evidence (for instance samples of piping), documentary and electronic evidence in the form of books or records that can be easily produced regardless of location, witness testimony, or some other form of evidence. In any event, to the extent that Defendants refer here to *physical* evidence being located in Tennessee, the Court notes—consistent with its discussion herein— that because all parties concede physical evidence is located in both Tennessee and Minnesota, physical evidence being located in Tennessee does not ultimately disturb the Court's conclusion that this particular factor is neutral in the transfer analysis.

In their Reply, Plaintiffs concede that some physical evidence is in Tennessee, and state that "the relevant physical evidence are Plaintiffs' removed PEX (located in Tennessee) and the PEX samples that Defendants concede (Opp. at 9) are in Minnesota, and thus this factor is neutral." (Doc. No. 148 at 6).

To the extent that this factor concerns the location of books, paper records, or other documents (or for that matter other electronic records) in particular, this "factor is typically considered to be neutral in the modern age; indeed, that was the case even a dozen years ago, when technology was less advanced than it is today." *Patel*, 2021 WL 4133964, at *9. *See also Sony/ATV Music Pub. LLC v. CAVS USA, Inc.*, No. 3:08-0265, 2009 WL 2177110, at *9 (M.D. Tenn. July 21, 2009) ("[T]his factor is generally considered neutral given the present technology for producing documents in distant places."). But the Court will analyze, as the parties have done, this factor to the extent that it concerns the location of relevant *physical* evidence.[16] *Cf. Watermark Solid Surface, Inc. v. Sta-Care, Inc.*, No. 3:07-0993, 2008 WL 2485612, at *6 (M.D. Tenn. June 17, 2008) (noting that physical evidence being located in a particular district weighed in favor of transfer to that district).

Here, the parties agree that relevant physical evidence is located in both Minnesota and Tennessee. (Doc. No. 148 at 6 ("relevant physical evidence are Plaintiffs' removed PEX (located in Tennessee) and the PEX samples that Defendants concede (Opp. at 9) are in Minnesota, and thus this factor is neutral."); Doc. No. 146 at 9 (some "physical evidence is located in Tennessee" but "certain PEX samples are located in Minnesota")). Given these circumstances, the Court will treat this factor as neutral. *See Weng v. Hana Japanese Steakhouse, Inc.*, No. 2:18-CV-183, 2020 WL 12894127, at *4 (E.D. Tenn. Dec. 21, 2020) (noting, where relevant physical evidence was

---

[16] As used herein, "physical evidence" does not include evidence in the form of *records or documents* even if they exist in what may considered "physical" form.

located in both the original venue and the proposed new venue, that this factor was neutral in the transfer analysis).

### e. Plaintiffs' Choice of Forum

Next, the Court turns to Plaintiffs' choice of forum. At the outset, the Court notes that this case is unusual insofar as Plaintiffs are moving to transfer a case *from* their *own* initial chosen forum in this district to a new district. *See Setliff v. Charter Mfg. Co., Inc.*, No. 3:23-CV-2255, 2025 WL 696790, at *3 (N.D. Ohio Mar. 4, 2025) (noting that it is unusual for a plaintiff, rather than a defendant, to move to transfer venue). Nevertheless, the "right to a transfer under [Section 1404(a)] is available to a plaintiff as well as a defendant." *Philip Carey Mfg. Co. v. Taylor*, 286 F.2d 782, 784 (6th Cir. 1961).

In evaluating transfer under Section 1404(a), "[t]he plaintiff's choice of forum is accorded some deference and given substantial weight, although it is not a dispositive factor." *Patel*, 2021 WL 4133954, at *11 (quoting *Forward Air, Inc. v. Dedicated Xpress Servs., Inc.*, No. 2:01-CV-48, 2001 WL 34079306, at *5 (E.D. Tenn. Dec. 13, 2001)). However, in cases involving "class actions[,]" like the instant (putative) class action, "less weight is given to [a p]laintiff's choice of forum." *City of Pontiac Gen. Employees' Ret. Sys. v. Wal-Mart Stores, Inc.*, No. 3-12-0457, 2012 WL 12543462, at *2 (M.D. Tenn. July 25, 2012). It is important to note, given the particular posture of this Motion (i.e., given that the motion seeking transfer is brought by Plaintiffs), that courts—when considering a motion to transfer venue filed by a *plaintiff*—have held that a plaintiff's proposed transferee forum should be afforded some weight in the transfer analysis as that plaintiff's chosen forum. *Setliff*, 2025 WL 696790, at *3 (concluding that a plaintiff's proposed transferee forum carries weight in the transfer analysis). Further, courts have afforded plaintiff's proposed transferee forum weight as that plaintiff's choice of forum in instances where that forum

"has a connection to the litigation and [a] [d]efendant maintains its principal place of business there." *Smith v. Gen. Info. Sols., Inc.*, No. 2:18-CV-230, 2018 WL 4019463, at *3 (S.D. Ohio Aug. 23, 2018). *But see Weng v. Hana Japanese Steakhouse, Inc.*, No. 2:18-CV-183, 2020 WL 12894127, at *5 (E.D. Tenn. Dec. 21, 2020) (noting, where a plaintiff moved to transfer venue, that "[a]s both forums have been chosen by Plaintiff, they essentially cancel each other out and render this factor neutral.").

Here, the Court is cognizant that this is both a (putative) class action and that the District of Minnesota was not Plaintiffs' initially chosen forum (which was the Middle District of Tennessee). Nevertheless, given that, for the reasons already described herein, the District of Minnesota has a "connection to the litigation," *Smith*, 2018 WL 4019463, at *3, and given that two of the three Defendants in this action maintain their principle places of business in the District of Minnesota, (Doc. No. 123 at ¶¶ 5-6),[17] the Court finds that Plaintiffs' proposed transferee forum in the District of Minnesota should be afforded some weight as the Plaintiffs' choice of forum, so that this factor weighs in favor of transfer.[18]

---

[17] The Court notes that considering whether a particular forum has a "connection to the litigation" in deciding whether a plaintiff's choice of forum should be afforded weight would seem to implicate other factors in the Section 1404(a) transfer analysis, such as where a case's center of gravity is located. This strikes the Court as running the risk of collapsing the various factors utilized in evaluating motions to transfer venue and muddling any analysis of transfer under Section 1404(a). Even so, district courts regularly consider whether a plaintiff's choice of forum has a connection to the litigation in evaluating whether that choice of forum should be afforded weight, and so the Court does so likewise herein. *See e.g., Smith*, 2018 WL 4019463, at *3; *Combs v. Bridgestone Americas, Inc.*, No. 322CV00346GNSCHL, 2022 WL 10662398, at *3 (W.D. Ky. Oct. 18, 2022) ("the weight accorded the plaintiff's choice of forum 'is . . . reduced . . . where the facts bear little connection to the chosen forum.'" (quoting *Pharmerica Corp. v. Crestwood Care Ctr., L.P.*, No. 3:12-CV-00511-CRS, 2013 WL 5425247, at *4 (W.D. Ky. Sept. 26, 2013))); *Steelcase, Inc. v. Smart Techs., Inc.*, 336 F. Supp. 2d 714, 720 (W.D. Mich. 2004) ("On the other hand, the plaintiff's choice of forum is entitled to significantly less weight where the forum has no connection with the matter in controversy.").

[18] Defendants argue that *Setliff*—and its holding that a plaintiff's second choice of forum deserves some deference in the transfer analysis—is inapplicable to this action because *Setliff* involved an FLSA collective action and so did not involve the inquiries concerning class certification that may take place in this action. (Doc. No. 146 at 7). The Court finds this particular argument to be slicing the bologna too thin.

### 3. Public Interest Factors

That takes the Court to the public interest factors. The parties have briefed three of the public interest factors: (1) the efficient management of justice and the avoidance of inconsistent or duplicative judicial rulings; (2) the local interest in deciding local controversies at home; and (3) the familiarity of the trial judge with the applicable state law.

#### a. *Efficient Management of Justice and Avoidance of Inconsistent or Duplicative Judicial Rulings*

As noted above, in evaluating where the public interest lies, courts have weighed whether transfer would serve "the efficient administration of the court system," *Sacklow*, 377 F. Supp. 3d at 881 (citing *Coffey*, 796 F.2d at 220-21), and whether transfer might prevent inconsistent or duplicative judicial rulings. *See Panaro*, 2024 WL 4291495, at *4.

Here, Plaintiffs contend that transfer would serve the efficient administration of the court system and help prevent duplicative and inconsistent judicial rulings. Plaintiffs note that two proposed class actions against Uponor, Inc.—*Fitzpatrick v. Uponor, Inc.*, No. 0:25-cv-04268 ("*Fitzpatrick*") and *Harmon v. Uponor, Inc.*, No. 0:26-cv-01140 ("*Harmon*")—are currently pending in the District of Minnesota.[19] (Doc. No. 142 at 5-8). Plaintiffs argue that *Fitzpatrick* and *Harmon* each name a defendant that is also a defendant to this action—namely Uponor Inc.—and

---

Additionally, to the extent that Defendants argue that transfer of this action now would somehow prejudice Defendants, (Doc. No. 146 at 7 ("Defendants in the present case would be prejudiced by transfer from this Court – which has already stated that the proposed class is 'on thin ice' – to an entirely new forum.")), Defendants do not identify (and the Court does not discern) any prejudice that Defendants would suffer as a result of the transfer of this action.

[19] When referring to or citing filings in *Fitzpatrick*, the Court will use the following format (for textual references and for citations, respectively): "*Fitzpatrick* Docket No. ___" or "(*Fitzpatrick* Doc. No. ___)".
When referring to or citing filings in *Harmon*, the Court will use the following format (for textual references and for citations, respectively): "*Harmon* Docket No. ___" or "(*Harmon* Doc. No. ___)".

"arise from similar factual allegations, and assert similar causes of action for similar classes." (*Id.* at 6). Plaintiffs specifically contend:

> [L]ike this case, the *Fitzpatrick* and *Harmon* actions assert claims against Uponor Inc. centered on similar factual allegations arising out of Uponor's failure to disclose design and/or manufacturing defects of the Uponor AquaPEX piping system that cause premature leaks and resulting property damage. [] Moreover, each case asserts similar claims — this Action, *Fitzpatrick*, and *Harmon* assert claims for strict product liability and negligence, while this Action and *Fitzpatrick* assert claims for fraud by concealment. [] And the cases are brought on behalf of similar and overlapping classes.

(Doc. No. 142 at 6). Plaintiffs further assert:

> Given the substantial factual and legal overlap among these actions, if this case is transferred to the District of Minnesota, it is likely that it will be consolidated with *Fitzpatrick* and *Harmon*, which would best serve the interests of judicial economy, promote coordination and the efficient use of party resources, and avoid inconsistent rulings.

(*Id.* at 6-7). Defendants in their Response do not contest any of these assertions.

The Court notes that shortly after the filing of the Motion, *Fitzpatrick* and *Harmon* were consolidated into an action (the "Consolidated Action") in the District of Minnesota bearing the same case number as *Fitzpatrick*. (*Harmon*, Doc. No. 16; *Fitzpatrick*, Doc. No. 43). In the Consolidated Action, the parties recently (on June 17, 2026) filed a "Consolidated Amended Complaint" against Uponor, Inc. at *Fitzpatrick* Docket No. 51.[20] So, some of Plaintiffs' arguments in the Motion discussing *Fitzpatrick* and *Harmon*—such as those referring to separate complaints and separate claims in each of *Fitzpatrick* and *Harmon*—are no longer up to date.

In any event, the Court notes that the Consolidated Amended Complaint shows that the Consolidated Action is centered on factual allegations and claims similar to those in the instant action. Indeed, the Consolidated Amended Complaint arises (at least in part) out of (alleged)

---

[20] The Court notes that it continues referring to and citing filings in the Consolidated Action as *Fitzpatrick* Docket __ and (*Fitzpatrick* Doc. No. ), respectively, given that *Fitzpatrick* and the Consolidated Action share the same case number in the District of Minnesota.

design and/or manufacturing defects of certain PEX piping, manufactured by Uponor, Inc., that (allegedly) caused leaks and resulting property damage to the plaintiffs in the Consolidated Action. (*Compare Fitzpatrick* Doc. No. 51 at ¶¶ 4, 7, 9, 278, 281 *with* Doc. No. 123 at ¶¶ 44, 45, 53, 73).

Given these circumstances, the Court finds that it is in the interest of the efficient administration of the court system and in the interest of avoiding duplicative and inconsistent judicial rulings to transfer this action to the District of Minnesota, where it can be tried by the same court (the District of Minnesota) that is adjudicating the related Consolidated Action and potentially be consolidated with the Consolidated Action in the District of Minnesota. *See Sacklow*, 377 F. Supp. 3d at 881 ("[R]elated litigation should be transferred to a forum where consolidation is feasible even if not guaranteed." (internal quotation marks omitted)); *Panaro*, 2024 WL 4291495, at *4 ("Considering there are many cases pending in the [transferee district] which involve precisely the same issues here, denying the transfer of venue would lead to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." (internal quotation marks omitted)).

So, the Court finds that this factor weighs in favor of transfer.[21]

> ### b. Local Interest in Deciding Local Controversies at Home

Turning to the local interest in deciding local controversies at home, courts have held that there is a local interest in deciding cases where the "injurious events occurred." *Combs v. Bridgestone Americas, Inc.*, No. 322CV00346GNSCHL, 2022 WL 10662398, at *3 (W.D. Ky. Oct. 18, 2022).

---

[21] Defendants also argue that transfer of this action would not promote the "efficient administration of the court system" because this Court has already "addressed multiple discovery disputes, four (4) amended complaints, and dispositive motions filed by three (3) separate defendants." (Doc. No. 146 at 6). The Court does not find this argument compelling. Although the Court has devoted significant judicial resources to this matter already, that does not mean that *future* judicial resources would not be more efficiently spent in a different venue.

Defendants argue that there is a strong local interest in deciding this action in this district because this action involves a "Tennessee-only class action about damage to Tennessee homes and structures [and] is [thus] quintessentially a local controversy." (Doc. No. 146 at 6). Plaintiffs argue by contrast that this action is not a "quintessentially local controversy" and point out that "[two of the three Defendants'] principal place[s] of business [are in Minnesota] and [that] the allegedly defective [] PEX pipe was designed, manufactured and marketed [in Minnesota]." (Doc. No. 148 at 4).

The Court recognizes that Plaintiffs are Tennessee residents who were (allegedly) injured in Tennessee by an (allegedly) defective product manufactured by Defendants. (*See generally* Doc. No. 123). Although these circumstances might point to a strong local interest in adjudicating this action here, the Court also notes that many of the "injurious events" underlying this action, such as the production of the at-issue PEX, occurred in Minnesota. (Doc. No. 142-2 at 12). And indeed, the Court notes that there might also be a local interest in Minnesota adjudicating this action given that—as discussed above—two of the Defendants have their principal places of business *in* Minnesota. *Cf. Sacklow*, 377 F. Supp. 3d at 880 ("When a company is incorporated in a state, there can sometimes be a compelling public interest in deciding a controversy [in that state]."); *Mina v. Red Robin Int'l, Inc.*, No. CV189472PSGGJSX, 2020 WL 4037163, at *4 (C.D. Cal. Mar. 3, 2020) ("Colorado has a significant local interest in having a dispute involving a company headquartered in its state decided at home.").

So, the Court finds that this factor is neutral.[22]

---

[22] Defendants also state in passing that "Tennessee's public policy interest in the application of its tort law and TCPA to Tennessee consumers is self-evident." (Doc. No. 146 at 6). Accepting that Tennessee has a public policy interest in the application of its own law, that is not to say that Tennessee necessarily has much of an interest in the application of its tort law and the TCPA by a *Tennessee-based judge in particular*. And consistent with its discussion above, the Court has little doubt that a judge in the District of Minnesota would be more than capable of applying Tennessee state law. *See e.g., Metz v. U.S. Life Ins. Co. in City of*

### c. Knowledge of Applicable State Law

Finally, the Court turns to the last factor the parties briefed: knowledge of applicable state law. The parties agree that Tennessee law governs this action. (Doc. No. 148 at 4; Doc. No. 146 at 6). Naturally, the undersigned, sitting in Tennessee, would tend to be more familiar with Tennessee state law than the judges sitting in the District of Minnesota. Nevertheless, this action involves claims that are—at least in part—rooted in "basic tort law" (such as Plaintiffs' claims for negligence and product liability) so that any court would be fully capable of adjudicating these claims. *Sacklow*, 377 F. Supp. 3d at 879 (finding that factor neutral where case involved "basic tort law" and noting courts in New York were perfectly capable of applying Tennessee state law).[23]

Weighing these circumstance—i.e., that this action involves the application of Tennessee law, even if much of the Tennessee law that will be applied is composed of "basic tort law"—the Court finds that this factor weighs slightly in favor of maintaining this action in this district and against transfer.

### 4. Other Factors

As the Court indicated elsewhere, there are other factors—not analyzed by the Court herein—that courts sometimes consider in evaluating whether transfer is appropriate. Here, however, neither party has argued that the Court should consider these other factors in its analysis

---

*New York*, 674 F. Supp. 2d 1141, 1148 (C.D. Cal. 2009) ("[C]ourts in [one state] are fully capable of applying [another state's] substantive law.")

To the extent that Defendants meant to invoke Tennessee's interest in having this case decided *in Tennessee* (something distinguishable, though overlapping, with having this case decided by a *Tennessee judge*), the Court understands that such invocation would serve merely as another point regarding the local interest in deciding local controversies at home. And for the reasons described in the body of this Memorandum Opinion, the Court finds that that particular factor is neutral.

[23] The Court also does not foresee—and Defendants do not argue otherwise—that the judges sitting in the District of Minnesota would have any difficulty in adjudicating the TCPA claim in this action. *Cf. Sacklow*, 377 F. Supp. 3d at 879 (claims brought under "analogous state consumer protection laws . . . are the types of claims that federal courts routinely and skillfully consider.").

---

of the Motion. And the Court does not discern that any of these other factors would be probative of whether venue should or should not be transferred in this particular case.

Balancing the factors that the Court has analyzed herein, the Court finds in its discretion that this action should be transferred to the District of Minnesota. Although acknowledging that certain factors (that is, the location of sources of proof, the convenience of the parties and the local interest in deciding this action) are neutral on the question of transfer and that one factor (knowledge of applicable state law) weighs (however slightly) against transfer, the Court notes that many of the factors (the convenience of witnesses, the case's center of gravity, Plaintiffs' choice of forum, and the efficient administration of the court system and avoidance of inconsistent or duplicative rulings) weigh in favor of transfer. Moreover, the factors that the Court has found to weigh in favor of transfer tend to be the factors given more weight in the transfer analysis. *See e.g., Sacklow*, 377 F. Supp. 3d at 878 ("[t]he convenience of witnesses, especially non-party witnesses, is perhaps the most important factor in the transfer analysis."); *Patel*, 2021 WL 4133954, at *9 ("[a] fundamental principle guiding the Court's analysis of a motion to transfer is that litigation should proceed in that place where the case finds its center of gravity.").

So, the Court will grant the Motion and transfer this action to the District of Minnesota. *Cf. Hatcher Investments, LLC v. Belfor USA Grp., Inc.*, No. 2:21-CV-11005, 2022 WL 600895, at *4 (E.D. Mich. Feb. 28, 2022) (finding where "[f]our factors favor transfer, one factor weighs against transfer, and the remaining factors are neutral" that transfer is warranted); *Pouliot v. Bd. of Trs. of Univ. of Illinois*, No. 18 C 6147, 2019 WL 1057316, at *4 (N.D. Ill. Mar. 6, 2019) (transferring action where "two private factors weigh heavily in favor of transfer, one weighs slightly against transfer, and two are neutral" and where one public interest factor is neutral, one public interest factor weighs slightly against transfer, and one public interest factor is in favor of transfer).

<u>CONCLUSION</u>

For the reasons discussed above, Plaintiffs' Motion (Doc. No. 142) will be **GRANTED**, and the Clerk of the Court will be directed to transfer this action to the United States District Court for the District of Minnesota. Given the impending transfer of this action, the pending motions in this action related to discovery (Doc. Nos. 129, 138, 147) will be **DENIED** as moot.[24] The pending motion to dismiss (Doc. No. 125) will remain pending.

An appropriate corresponding order will be entered.

_Eli Richardson_

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[24] The Court denies these particular motions as moot (meaning, without prejudice) because the judge in the District of Minnesota who will be assigned this case may wish to determine afresh the appropriate scope and need for discovery in this action, particularly given the potential for this action to be consolidated with the Consolidated Action.